**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLORADO**

Case No.:   22-cv-2241

BRIAN LITTLEFIELD,

                Plaintiff,

v.

WELD COUNTY SCHOOL DISTRICT RE-5J, a political and quasi-municipal subdivision; LESLIE ARNOLD, individually and in her former official capacity as Superintendent; and CARA ANDERSON, individually and in her former official capacity as Assistant Superintendent of Human Resources,

                Defendants.

---

**COMPLAINT AND JURY DEMAND**

---

Plaintiff, Brian Littlefield (hereinafter "Dr. Littlefield" or "Plaintiff"), by and through his undersigned attorney, brings this action and alleges as follows:

## I.    <u>INTRODUCTION</u>

Being a Christian white conservative male is not synonymous with intolerance and xenophobia; however, according to Leslie Arnold, then Superintendent of Weld County School District RE-5J and Cara Anderson, then the Assistant Superintendent of Human Resources of that same District, it was.  Dr. Brian Littlefield, a former Principal at Weld County School District RE-5J, is a pious Christian male who lives his life through the teachings of Jesus Christ.  Dr. Littlefield never brought the teachings of Christianity during school hours nor in his official capacity as a school administrator.  On his time off would he frequently make efforts to educate those willing to hear his views on his faith.

1

On February 25, 2021, he spoke with a group of Christian athletes to provide faith-based guidance.   Soon thereafter Ms. Arnold became aware of Dr. Littlefield's faith-based speech that had no connection to school.   Shortly after becoming aware of his speech Ms. Arnold then changed Dr. Littlefield's performance evaluation from a positive review to threatening corrective action.   Days later, Dr. Littlefield was called into a meeting with both Ms. Arnold and Ms. Anderson wherein it became evident that his Christian faith was an issue with Ms. Arnold and Ms. Anderson.

Based on the intolerance that Ms. Arnold and Ms. Anderson showed towards Dr. Littlefield he promptly filed a complaint with the District claiming, in part, religious and gender discrimination.   Days later, Ms. Anderson and Ms. Arnold then retaliated by filing their own complaints against him.   Ultimately, Ms. Arnold demoted Dr. Littlefield a mere 60 days after the filing of his complaint and then, in turn, and at the behest of Ms. Anderson, the District terminated Dr. Littlefield a mere 90 days after filing of his complaint.

Dr. Littlefield is bringing this action to right the wrong that was unjustly inflicted upon him because of his faith and/or gender.   The actions of Ms. Arnold and the District not only violated Dr. Littlefield's rights as codified by the First Amendment to United States Constitution, the Civil Rights Act of 1964, but equally violated his rights under the laws of the State of Colorado.

## II.  PARTIES

1.      At all times relevant, Plaintiff Dr. Littlefield has been a resident of the State of Colorado.

2.      Defendant Weld County School District RE-5J (hereinafter referred herein as the "District") is a political and quasi-municipal subdivision of the State of Colorado.

3.      Defendant Leslie Arnold is an individual resident of the State of Colorado.

4.      Defendant Cara Anderson is an individual resident of the State of Colorado.

## III.   JURISDICTION & VENUE

5.      This action arises under the Constitution and laws of the United States and 42 U.S.C. §1983.   Additionally, jurisdiction is proper because Dr. Littlefield is further alleging violations of his rights under Title VII.   Jurisdiction is conferred on this Court pursuant to 28 U.S.C. §§ 1331 and 1343.  In addition, this Court has jurisdiction to resolve any state law claims brought by Dr. Littlefield under 28 U.S.C. § 1367.

6.      Venue in the United States District Court is proper in that the action complained of took place in the State of Colorado, and all the parties are residents of the state.

## IV.   FACTUAL ALLEGATIONS

### a.   Dr. Brian Littlefield's educational background and religious commitment

7.      Dr. Littlefield has been an educator for over 27 years.  Over that 27-year career, 20 of which was in school administration, Dr. Littlefield has never received any discipline or negative evaluation until his untimely departure from the District.

8.      The culmination of Dr. Littlefield's pursuit of his own personal education

came in 2016 when he received his doctorate in Educational Leadership and Administration from the Dallas Baptist University.   In addition to his doctorate, Dr. Littlefield received his Masters' Degree in K-12 Educational Leadership from Texas State University and a Bachelors' Degree in Education from Stephen F. Austin State University.

9.      In 2019, Dr. Littlefield was hired by the District to be the Principal at Roosevelt High School ("RHS").  Dr. Littlefield held his position from May 19, 2019 through June 1, 2021.

10.     As the Principal of RHS, Dr. Littlefield's job duties were: (1) the academic leader of the campus; (2) he led and created a positive culture and climate at RHS; (3) led all faculty and staff at RHS and was tasked with making personnel decisions at the high school; (4) led all student academic and extra-curricular progress and programs; (5) he was responsible for the social/emotional/physical safety of students, faculty, and staff; and (6) served on District leadership committees.

11.     In July 2018, Ms. Arnold was hired by the District to be the Superintendent of Schools.

12.     In October 2020, Dr. Littlefield began reporting directly to Ms. Arnold.

13.     From that point forward Ms. Arnold was the individual that evaluated Dr. Littlefield's performance.

14.     The District provides performance evaluations for District employees.   The performance evaluations are evaluations of the individual employee's work performance for the full calendar school year.   The performance evaluations are provided to the employee twice a year.   The first is a mid-year review which is every January and then

the final review which is completed in May.  The results of performance evaluations can determine salary increases and job renewals.

15.     For the 2020-2021 calendar year, Dr. Littlefield's performance was initially rated satisfactory.  In fact, as of January 14, 2021, the Principal survey conducted by the District revealed glowing accolades of Dr. Littlefield from his peers as an effective administrator.  (Attached hereto as **Exhibit A** is a copy of the survey).  As will be addressed more fully below, all that changed on February 27, 2021, when Ms. Arnold engaged in a campaign of unlawful discriminatory activity that ultimately resulted in Dr. Littlefield being forced out of the District in June 2021.

16.     In addition to his commitment to education, Dr. Littlefield also has a strong religious commitment in Christianity.

17.     As a teacher and as an athletic coach, Dr. Littlefield has been a sponsor of the Fellowship of Christian Athletes.  The Fellowship of Christian Athletes is an organization that focuses on empowering coaches and athletes through the teachings of Jesus Christ.  Upon information and belief, the Fellowship of Christian Athletes is recognized by the Internal Revenue Service as a non-profit organization under Section 501(c)(3) of the Internal Revenue Code.

18.     In addition to his sponsorship of the Fellowship of Christian Athletes, Dr. Littlefield also served as deacon for his Church as well as teaching young married couples.  Finally, he has been a director of a youth Christian Sunday School.

19.     On February 25, 2021, and before school started, Dr. Littlefield gave a motivational speech to members of the Fellowship of Christian Athletes.

20.     At all times relevant, Dr. Littlefield was not giving the speech during school hours nor in his capacity as the principal.  Dr. Littlefield also did not use any school resources to prepare his speech.  Further, the giving of the speech did not detract from his ability to perform all of his normal job duties as principal.  Dr. Littlefield was talking to the Fellowship of Christian Athletes as a member of the Church, religious mentor, and devoted Christian.

**b.      Protected constitutional activity meets intolerance**

21.     On February 25, 2021, Ms. Arnold became aware of Dr. Littlefield's speech with the Fellowship of Christian Athletes.  Ms. Arnold became aware of this speech when RHS Assistant principal Rebecca Albert informed Ms. Arnold that Dr. Littlefield was asked to speak with students of the Fellowship of Christian Athletes.

22.     Just days after Dr. Littlefield's speech with the Fellowship with Christian Athletes, on Saturday February 27, 2021, Ms. Arnold provided Dr. Littlefield with the amended performance evaluation.  The amended evaluation identified concerns and issues that Ms. Arnold purportedly had with Dr. Littlefield's performance as the Principal of RHS.  Those concerns—which were not in the original version of the evaluation— included various false allegations such as Dr. Littlefield having: (1) implicit biases; (2) not promoting safety and equity for all students, staff, and community; (3) failing to respond to parents and staff in a "timely manner" or not responding to them at all; and (4) being disrespectful and insubordinate to Ms. Arnold.

23.     Prior to the alteration and changes to Dr. Littlefield's performance evaluation, he had never been counseled nor advised that there were any concerns or

complaints regarding his duties as an administrator.  The first time such concerns were aired to him was right after he gave his speech to the Fellowship of Christian Athletes.

24.     Upon information and belief, the purported issues of concern as laid out in Paragraph 22 herein not only lack any factual support but are manufactured pretext to amend Dr. Littlefield's performance evaluation and thus jeopardize his position within the District.

25.     An example of Ms. Arnold contriving or purposefully creating a conduct issue is the allegation that Dr. Littlefield was unprepared for the February 26, 2021, teacher union negotiation.   Ms. Arnold alleges that she provided Dr. Littlefield with sufficient opportunity to prepare for the negotiations, but that Dr. Littlefield failed in that task.  Contradicting Ms. Arnold's claim are the following salient facts:

      • Days before the negotiations commenced, Dr. Littlefield requested to have an in-person meeting with Ms. Arnold to discuss the negotiation plan.  Those invitations were rebuffed by Ms. Arnold with a response of "just send me your stuff I'm too busy to meet."

      • Dr. Littlefield spent months working with teachers and the RHS administrative team preparing and planning for the negotiation meetings.  In furtherance of the strategy sessions, Dr. Littlefield again emailed Ms. Arnold to obtain a block schedule, and was requesting two additional full-time teachers or FTEs that would have addressed the concerns of the teachers' union which, in turn, would then have completed the negotiations.

      • On February 26th, the day of the negotiations with the union, when Dr. Littlefield began presenting what was prepared, which included the teacher/FTE's, Ms. Arnold promptly stopped Dr. Littlefield's presentation and stated: "I never approved those teachers/FTE's and you never asked me for them."   Contradicting Ms. Arnold's statement were the previous emails that were sent to her from Dr. Littlefield setting forth this very strategy.

26.     On March 1, 2021, Dr. Littlefield was required to meet with Ms. Arnold.  In that meeting were various members of the RHS administration as well as Cara Anderson, the Assistant Superintendent of Human Resources.

27.     The March 1st meeting was approximately three hours.  During that meeting, Dr. Littlefield was subjected to numerous false allegations ranging from him being homophobic—which was and is untrue[1]—to accusing him of struggling with Ms. Arnold because she was female, which was also untrue.  In addition, Ms. Arnold made numerous unfounded accusations of purported complaints that were made against Dr. Littlefield during his tenure with RHS.[2]  Where Ms. Arnold was using this meeting to air her own personal grievances and concerns of meritless complaints, Ms. Arnold would not allow Dr. Littlefield to respond to the baseless accusations.  In other words, he was to sit there and "just take it."

28.     Of considerable note, and displaying the discriminatory animus that Ms. Arnold felt towards Dr. Littlefield, were the following untoward comments:

- "Brian, you are not at a Christian School."
- Dr. Littlefield was accused of not including or being inclusive of children because of his values and religious beliefs.[3]
- Dr. Littlefield has a "large amount of bias."[4]
- "Nobody cares about your values or religion"
- "Brian you don't understand your White Privilege, you need to learn to keep it in check"

---

[1] Dr. Littlefield has a family member that is homosexual whom he shares a close relationship with.

[2] Prior to the March 1, 2021, meeting, Dr. Littlefield was never told nor advised that there were any complaints made against him.

[3] Dr. Littlefield has never excluded a child nor treated one differently because of his own personal values and religious beliefs.  This was yet another example of false allegations to place Dr. Littlefield in a false light.

[4] This accusation was offensive not only for its falsity but also considering Dr. Littlefield came from a poor bi-racial family.

- "I have a sense that you struggle with my being a female leader"
- "If you can't start acting BLUE, then you need to start learning to act like it" [This is in reference to him being a religious conservative].
- Dr. Littlefield was told that he is a "conservative religious white male and that faculty and staff didn't feel comfortable coming to [him] with issues."

29.     As to Ms. Arnold's statement that staff were uncomfortable coming to Dr. Littlefield, the anonymous survey just 42 days prior counters that claim.  *See* **Exhibit A**.

30.     Like Ms. Arnold, Ms. Anderson also displayed displeasure with Dr. Littlefield by stating that she "didn't share the same religion as [Dr. Littlefield] and that she was a supporter of LGBTQ."   To be clear, Dr. Littlefield does not harbor any anti-LGBTQ sentiment.  She then asked if Dr. Littlefield has a "problem with her."

31.     In the context of critiquing Dr. Littlefield's performance, the statements by both Ms. Arnold and Ms. Anderson regarding his religion were both bizarre and inappropriate, for Dr. Littlefield did not discuss the teachings of Christianity, or religion in general, when administering his duties as the Principal of RHS.  In short, that Dr. Littlefield is a practicing and devout Christian should have been irrelevant in evaluating his duties as RHS' Principal because he never proselytized at RHS nor otherwise attempted to impart his religious beliefs on others at the school; however, Ms. Arnold and Ms. Anderson shined a light on his Christian values as part their own evaluation of Dr. Littlefield as an educator.

32.     Based on the offensive and bigoted statements made by both Ms. Arnold and Ms. Anderson, it was apparent that both Ms. Arnold and Ms. Anderson believed being a white Christian male in America was synonymous with intolerance.   Ironically, it was

their own prejudices and intolerance against Christian conservatism that was the roadblock for forging a fruitful working relationship with Dr. Littlefield.[5]

**c.   Dr. Littlefield encounters retaliation after filing his complaint**

33.     Based on Ms. Arnold's and Ms. Anderson's misconduct during the March 1, 2021, meeting, Dr. Littlefield submitted a formal complaint against both of them to Board of Education President Michael Wailes.

34.     The complaint was filed on March 2, 2021.  The complaint alleges various allegations of inappropriate conduct.  One of the claims against Ms. Arnold is that she belittled Dr. Littlefield in front of other administrative staff by stating that he was not a "very smart man."  In addition, the complaint further alleges that Ms. Arnold and Ms. Anderson have subjected him to discrimination for being a "conservative Christian male" and that they created a "hostile work environment."  Dr. Littlefield expressed his concern by stating that he feels very vulnerable and under attack because of his conservative values, his religious beliefs, and being a "white conservative male."

35.     On March 6, 2021, a mere four days after Dr. Littlefield filed his complaint against Ms. Arnold and Ms. Anderson, he was then subjected to retaliation by having a complaint filed against him by both Ms. Arnold and Ms. Anderson.

36.     Ms. Arnold and Ms. Anderson alleged that Dr. Littlefield engaged in the following conduct: inappropriate response to race issues; derogatory comments against LGBTQ individuals; engaged in gender inequity; lack of responsiveness on bullying

---

[5] It bears repeating that the alleged problems with Dr. Littlefield arose only after Ms. Arnold became aware of Dr. Littlefield's speech to the Fellowship of Christian Athletes.

issues; unpreparedness for union negotiations; failing to lead on safety measures; and using derogatory terms.

37.     Notably, none of the issues identified in the Arnold/Anderson complaint were ever raised as issues prior to March 1, 2021.

38.     While the dual complaints were pending, Dr. Littlefield was further harassed by Ms. Arnold and Ms. Anderson.  The harassment included: (1) telling Dr. Littlefield's staff that moving forward all decisions that were previously the duties of Dr. Littlefield will now go through Ms. Arnold instead; (2) advising Dr. Littlefield's staff that Ms. Arnold and Ms. Anderson were investigating Dr. Littlefield and that they needed all their help; (3) before the investigation even commenced Ms. Arnold told other RHS staff that Dr. Littlefield would not be returning to RHS the next school year; (4) Ms. Arnold required to meet with Dr. Littlefield one-on-one every week, which was never done before the complaint was filed against her; (5) Ms. Arnold and Ms. Anderson began monitoring Dr. Littlefield's' emails, phone and calendar; (6) firing Dr. Littlefield's own administrative assistant (Mrs. Powers) who was a person that was instrumental in aiding Dr. Littlefield in administering his daily duties;[6] and (7) demoting Dr. Littlefield to the position of co-Principal.

39.     Upon the filing of the dual complaints, the District began to investigate both the Littlefield complaint and the Arnold/Anderson complaints.

---

[6] Dr. Littlefield opposed the firing of Mrs. Powers.

40. Upon information and belief, the investigation began after the Arnold/Anderson March 6, 2021 complaint was submitted, with a final investigative finding made on April 19, 2021.

41. As part of the investigation to support Dr. Littlefield's complaint as well as refuting the allegations raised by Ms. Arnold and Ms. Anderson, he requested that the District interview the following individuals:

   a. Sara Hall, School Board Member
   b. Leslie Power, Former District Administrative Assistant
   c. Estrella Gallegos, District Counselor
   d. Robert Brinker, District Department Chair
   e. Paul Kratz, District Department Chair
   f. Robin Wells, former District Department Chair
   g. Dan Joiner, District Head Track Coach and business teacher
   h. Lane Wassinger, District Head Football Coach and teacher
   i. Paul Herman, District teacher
   j. Kayla Sommers, District Teacher and FCA Sponsor
   k. Brian Wells, District Teacher
   l. Jeanne Martin, District Receptionist
   m. Dr. Melinda Groom, Former District Chief Academic Officer
   n. Dr. Mona Berry, Former District Chief Academic Officer
   o. Andrew Yost, RHS Business Teacher and JMEA representative.

42. Upon information and belief, other than Mr. Andrew Yost, none of the other witnesses were ever interviewed by the District.

43. The District never advised Dr. Littlefield why his list of witnesses were not interviewed.

44. On April 19, 2021, the District ultimately sustained various allegations against Dr. Littlefield. The sustained allegations were: (1) not responding appropriately with regard to race-related issues; (2) making derogatory comments regarding the LBGTQ community; (3) treating female leaders differently than male leaders; (4) not being

responsive to student and parent concerns about bullying; (5) not being prepared for the JMEA negotiations; (6) not taking the lead on timely implementing Safety Measures at the high school and (7) using a derogatory slang in addressing students as "honyocks."

45.     Dr. Littlefield denied engaging in the conduct as set forth in Paragraph 44 herein.  Furthermore, Dr. Littlefield was surprised that the investigator could sustain the allegations and claim a thorough investigation was done when 14 of his witnesses were not even interviewed.

46.     Notably, during the time of the investigation, Ms. Arnold was still the Superintendent of the District and Ms. Anderson still held the position as Assistant Superintendent of Human Resources.

47.     Where Dr. Littlefield was found to have violated certain District policies, the claims that he brought against Ms. Arnold and Ms. Anderson were determined to be unsubstantiated by the investigator.

48.     Dr. Littlefield was alarmed that the investigator would not sustain any of the claims against Ms. Arnold and Ms. Anderson particularly when their at-issue statements were recorded and provided to the District investigator as evidence of the misconduct.

49.     On April 27, 2021, the District issued Dr. Littlefield a written warning regarding the sustained allegations identified in Paragraph 43 herein.  The written warning was made public by the Board of Education.

50.     On May 5, 2021, and during a Board of Education citizen comment period addressing the recent written warning received by Dr. Littlefield, nine of the ten people that spoke to the Board of Education were in support of Dr. Littlefield.  Furthermore,

Andrew Yost stated that Dr. Littlefield displays: "non-biased, non-judgmental and equal treatment to the entire student body."  Conversely, Ms. Arnold was described by the public as a "district leader with control issues, who is manipulative and with a management style that seems to churn chaos and drama while creating an environment of fear and retribution."

51.     During the same period of time, an RHS student created an online petition that was titled "Stand with Dr. Littlefield."  As of May 6, 2021, there were approximately 1,167 people who signed the petition.

52.     Where the District determined that a written warning was sufficient to resolve the alleged violations, Ms. Arnold took the position that a harsher penalty must be administered.

53.     Still incensed by the fact that Dr. Littlefield filed a complaint against her and unsated by the District's written warning, on May 7, 2021, Ms. Arnold sent an email to the Board of Education demanding that Dr. Littlefield be terminated.  Ms. Arnold stated, in part, the following: "I could agree to almost any scenario except leaving Brian at RHS."

54.     On May 12, 2021, the Board of Education terminated Ms. Arnold as the Superintendent.  In terminating Ms. Arnold, the Board of Education did not publicly state a reason from removing her from the District.

55.     Despite Ms. Arnold's termination, Ms. Anderson kept her position within the District until December 2021.  Upon information and belief, Ms. Anderson was ultimately terminated from the District in December 2021.

56.     Upon information and belief, and at all times relevant, Ms. Anderson was an ardent supporter of Ms. Arnold.

57.     Under the April 27, 2021 written warning, instead of meeting with Ms. Arnold on the weekly one-on-one meetings, Dr. Littlefield was to meet weekly with Tami Kramer. Upon information and belief, the likely reason that Dr. Littlefield was no longer going to be engaging in the weekly meetings with Ms. Arnold was due to the pending complaint he had against both her and Ms. Anderson.

58.     On May 3, 2021, and just nine days before Ms. Arnold was terminated, and still while Dr. Littlefield's complaint was pending, Ms. Arnold made the determination that Dr. Littlefield would no longer be the head Principal of RHS but demoted him to the position of co-Principal with Rebecca Albert.  This determination was not one of the directives set forth in the April 27th written warning.  Furthermore, this decrease in responsibility occurred in a one-on-one meeting with Ms. Arnold, which meeting appeared not be in comport with the April 27th directives.

59.     Being a co-Principal with Ms. Albert caused a decrease in Dr. Littlefield's responsibilities and duties.

60.     Even after Ms. Arnold's termination from the District, the District did not restore Dr. Littlefield's duties and responsibilities and kept him in the role of co-Principal at RHS.

61.     Less than 30 days after being demoted, Dr. Littlefield was called to a meeting with Ms. Anderson.  That meeting occurred on June 1, 2021.

62.     During the June 1, 2021 meeting, Ms. Anderson, acting in the capacity as the Assistant Superintendent of Human Resources, made the determination that Dr. Littlefield allegedly violated several directives as outlined in the April 27th written warning and as a consequence his contract with the District will not be renewed.  In other words, Dr. Littlefield was terminated.

63.     Ms. Anderson alleged that the directives Dr. Littlefield violated are as follows: (1) Dr. Littlefield failed to give notice to the Board of Education for non-renewing probationary teachers; (2) Dr. Littlefield's recommendation for non-renewal was made to the Board rather than through the "chain of command"; (3) Dr. Littlefield purportedly failed to follow the evaluation process before non-renewing the probationary teachers; and (4) Dr. Littlefield failed to delegate staffing responsibilities to his co-Principal.

64.     Of those allegations, only the third and fourth were the subject of the April 27th written warning.

65.     Contrary to Ms. Anderson's claim that Dr. Littlefield engaged in the alleged conduct, the non-renewed employees (or teachers) were both probationary employees, with one of the employees having engaged in conduct in the latter part of April 2021 that was just cause for non-renewal.  As relayed to Ms. Anderson, Dr. Littlefield stated that to avoid any issue he would agree to place both of the teachers on probationary contracts for the next year with performance improvement plans.  Ms. Anderson summarily rejected that recommendation.  Notably, one of the employees has since resigned.  Second, the non-renewal recommendation occurred on May 23, 2021, which was eight days before the June 1st statutory deadline for non-renewing probationary employees.  Certainly eight

days was sufficient notice to the Board to act upon Dr. Littlefield's non-renewal commendations. Third, and as to the allegation that he failed to follow the chain-of-command, Dr. Littlefield sent his recommendations to both Ms. Anderson and the Board because at that time there was no District Superintendent due to Ms. Arnold's termination. Dr. Littlefield provided the recommendations to those individuals that he believed were part of the decision-making process.

66.     As set forth in paragraph 63 herein, Ms. Anderson alleged that Dr. Littlefield failed to follow the evaluation process before non-renewing the probationary teachers. This accusation, like the others in the June 1st letter, lacked merit. At all times, Dr. Littlefield completed all of the evaluations he was required to undertake as the Principal of RHS, which evaluations were well documented. Equally baseless is the claim that Dr. Littlefield failed to delegate responsibilities to his co-Principal. Contrary to Ms. Anderson's claim is that Dr. Littlefield did in fact delegate faculty/staff decisions to his co-Principal.

67.     Upon information and belief, and before the District elected to terminate Dr. Littlefield's employment stemming from Ms. Anderson's June 1st letter, the allegations were not part of a formal investigation to determine whether there was actual merit to support Ms. Anderson's conclusions.

68.     Upon information and belief, Ms. Anderson did not recuse herself from the decision-making process in terminating Dr. Littlefield's employment despite being a named party in Dr. Littlefield's complaint.

69.     Upon information and belief, at the time Ms. Anderson made the determination that Dr. Littlefield's contract would not be renewed, Dr. Littlefield's complaint against her and Ms. Arnold was still pending.

70.     Upon information and belief, the District was aware that Dr. Littlefield's complaint against Ms. Anderson was still pending as of June 1, 2021 but nonetheless did not require nor instruct that Ms. Anderson recuse herself from deciding the non-renewal status of Dr. Littlefield's employment.

71.     At all times relevant, and as set forth below, both the District and Ms. Anderson knew that District policy precluded an employee from retaliating against another District employee who files a complaint.

72.     Upon information and belief, the District was aware that Dr. Littlefield's complaint alleged that both Ms. Arnold and Ms. Anderson violated his rights based on religious practice and as a white male.  Despite that knowledge, the District still allowed Ms. Anderson to decide whether Dr. Littlefield's contract with the District would be non-renewed.

73.     As the Assistant Superintendent of Human Resources, Ms. Anderson held a supervisory role above Dr. Littlefield.

74.     At all times relevant, the District had provided all District employees and students a copy of the District Handbook.  The District Handbook sets forth policies, regulations, and exhibits on the District's legal role in providing public education and the basic principles under the Board of Education's governance.

75.     At all times relevant, all District employees were required to review and comply with the policies contained within the District Handbook.

76.     The District Handbook states in relevant part the following:

The Board is committed to providing a safe learning and work environment where all members of the school community are treated with dignity and respect.  The schools in the district are subject to all federal and state laws and constitutional provisions prohibiting discrimination on the basis of disability, race, creed, color, sex, sexual orientation, marital status, national origin, religion…Accordingly, no otherwise qualified student, employee, applicant for employee or member of the public may be excluded from participation in, be denied the benefits of, or be subjected to unlawful discrimination under and district program or activity on the basis of disability, race, creed, color, sex, sexual orientation, marital status, national origin, religion….

77.     The District policy further stated that the District will "investigate and resolve promptly any and all complaints of unlawful discrimination and harassment." Furthermore, the District's policy states that it will "investigate and appropriately discipline staff and student found to be responsible for incidents of harassment or unlawful discrimination in violation of Board policy."

78.     Finally, District policy states that "retaliation against the complainant, respondent, or any person *who filed a complaint or participated in an investigation, is prohibited*.  Individuals found to have engaged in retaliatory behavior will be subject to disciplinary measures."  (Emphasis added).

79.     At all times relevant, and while Ms. Arnold was the Superintendent, she was tasked with not only carrying out the policies of the Board of Education but she had to follow them as well.

80.     Likewise, Ms. Arnold, as an employee of the District, was also required to follow District policies.

81.     At all times relevant, Dr. Littlefield exhausted the administrative remedies and received a right to sue by the Equal Employment Opportunity Commission and the Colorado Civil Rights Division.   This action is being timely filed within the ninety-day statutory period.

**FIRST CLAIM FOR RELIEF**
(First Amendment Violation under 42 U.S.C. §1983)
Unlawful Retaliation for Freedom of Association
All Defendants

82.     The Plaintiff incorporates by reference all of the allegations set forth above.

83.     At all times relevant, Dr. Littlefield was and is a member of the Christian Church.

84.     At all times relevant, Dr. Littlefield openly associated himself as a member of the Christian Church.  As discussed above, however, Dr. Littlefield never proselytized at RHS nor otherwise attempted to impart his religious beliefs on others at the school.

85.     At all times relevant, Dr. Littlefield was engaged in the constitutionally protected activity of aligning himself with his Christian faith by speaking openly of his faith to the Fellowship of Christian Athletes.

86.     As set forth above, the Defendants engaged in open hostility towards Dr. Littlefield due to his affiliation with Christianity.  As a result of Defendants' hostility towards Dr. Littlefield and his faith, he filed a complaint opposing such unlawful conduct.

87.     As a result of Dr. Littlefield's actions, Ms. Arnold, a Defendant in this case, not only filed a complaint soon after Dr. Littlefield's lawful opposition to her unlawful

conduct, but also demoted him to the position of co-Principal.  Such actions are prohibited under District policy.

88.     Additionally, a mere 90 days after Dr. Littlefield complained of Ms. Arnold's and Ms. Anderson's intolerance of his Christian faith, the District terminated Dr. Littlefield. This too was a violation under District policy.  Notably, Dr. Littlefield had no prior history of disciplinary action.

89.     Significantly, Dr. Littlefield was put on a written warning on April 27, 2021, which Ms. Anderson and the District were aware.  Just thirty-five days after receiving a written warning, Assistant Superintendent of Human Resources Ms. Anderson (who was still a subject of Dr. Littlefield's complaint) advised Dr. Littlefield he was terminated.  This too violated District policy.

90.     Dr. Littlefield's association with the Christian Church and/or his opposition to Ms. Arnold's and Ms. Anderson's intolerance towards Dr. Littlefield's Christian faith was a substantial or motivating factor to: (1) issue him a written warning; (2) demote him to co-Principal; and (3) terminate his employment with the District.

91.     As a result of Defendants' actions, Dr. Littlefield suffered injuries that would chill a person of ordinary firmness from continuing to engage in the protected activity.

92.     At all times relevant, the Defendants' actions were done under color of State law.

93.     As a direct and proximate result, Dr. Littlefield was injured which injuries shall be proven at trial.

<u>**SECOND CLAIM FOR RELIEF**</u>
(Discrimination or unfair employment practice violation – C.R.S. §24-34-402)
All Defendants

94.    The Plaintiff incorporates by reference all of the allegations set forth above.

95.    It is discriminatory and/or unfair employment practice to discharge, to promote or demote, to harass during the course of employment, or to discriminate in matters of compensation, terms, conditions, or privileges of employment against any individual otherwise qualified because of persons' race, sex and/or religion.

96.    It is also discriminatory and/or unfair employment practice to discriminate against a person because such person had opposed any practice that was either discriminatory or an unfair employment practice.

97.    At all times relevant, Dr. Littlefield openly associated himself as a member of the Christian Church.

98.    At all times relevant, Dr. Littlefield was engaged in the constitutionally protected activity of aligning himself with his Christian faith by speaking openly of his faith to the Fellowship of Christian Athletes.

99.    As set forth above, the Defendants engaged in open hostility towards Dr. Littlefield due to his affiliation with Christianity and/or gender.  As a result of Defendants' hostility towards Dr. Littlefield as a male and his faith, he filed a complaint opposing such unlawful conduct.

100.    As a result of Dr. Littlefield's actions, Ms. Arnold, a Defendant in this case, not only filed a complaint soon after Dr. Littlefield's lawful opposition to her unlawful

conduct, but also demoted him to the position of co-Principal.  Such actions are prohibited under District policy.

101.   Additionally, a mere 90 days after Dr. Littlefield complained of Ms. Arnold's and Ms. Anderson's intolerance of his Christian faith, as well as accusations of gender discrimination, the District terminated Dr. Littlefield.   Prior to the retaliatory complaint against him by Ms. Arnold and Ms. Anderson, Mr. Littlefield's disciplinary record at RHS was spotless.

102.   Dr. Littlefield's association with the Christian Church and/or his opposition to Ms. Arnold's and Ms. Anderson's intolerance towards Dr. Littlefield's Christian faith and/or his assertion that he was subjected to gender discrimination was a substantial or motivating factor to: (1) issue him a written warning; (2) demote him to co-Principal or (3) terminate his employment with the District.

103.   As a direct and proximate result, Dr. Littlefield was injured which injuries shall be proven at trial.

## THIRD CLAIM FOR RELIEF
(Retaliation Claim under Title VII of the Civil Rights Act of 1964)
Defendant Weld County School District RE-5J

104.   The Plaintiff incorporates by reference all of the allegations set forth above.

105.   Ms. Arnold and Ms. Anderson subjected Dr. Littlefield to unlawful discrimination based on his being a Christian white male.

106.   As a result of being subjected to gender discrimination, as set forth more fully above, Dr. Littlefield opposed the discriminatory treatment by filing a complaint to the

District in compliance with District policy and consistent with the anti-retaliation provisions of Title VII.

107.    Dr. Littlefield was engaged in protected opposition to unlawful employment practices committed by the Defendants under Title VII.  Specifically, Dr. Littlefield voiced opposition to unlawful gender discrimination.

108.    Defendants were clearly aware that Dr. Littlefield was voicing his opposition to unlawful gender discrimination practices.  Defendants were aware that Dr. Littlefield had the right to oppose unlawful gender discrimination practices.  However, despite Dr. Littlefield's protected right to oppose activities prohibited by Title VII, Defendants intentionally retaliated against him by terminating him for engaging in the protected activity.

109.    Dr. Littlefield suffered an employment action that a reasonable employee would have found to be materially adverse, meaning that the actions taken by Defendants described herein would have dissuaded a reasonable worker from making or supporting a charge of discrimination.

110.    The District is liable for the acts and omissions of its agents and employees. The District, either directly or by and through its agents, retaliated against Dr. Littlefield which caused him with severe injuries, damages and losses, which shall be proven at trial.

111.    Defendants' conduct was the proximate cause of Dr. Littlefield's injuries, damages and losses, which shall be proven at trial.

112.   Defendants' conduct was engaged in with malice or with reckless indifference to the federally protected rights of Dr. Littlefield within the meaning of Title VII.

WHEREFORE, Plaintiff prays for judgment in his favor as follows:

A.   On the First Claim for Relief against Defendants in an amount to be proven at trial;

B.   On the Second Claim for Relief against Defendants in an amount to be proven at trial;

C.   On their Third Claim for Relief against Defendants in an amount to be proven at trial;

D.   Attorneys' fees and costs as permitted under federal and state law;

E.   Pre-and Post-Judgment interest, costs and expert witness fees; and

F.   Such other and further relief as the court deems proper in the circumstances.

**PLAINTIFF DEMANDS TRIAL BY JURY OF ALL CLAIMS AND ISSUES SO TRIABLE.**

Respectfully submitted this 31st day of August, 2022.


*/s/ Reid J. Elkus*
Reid J. Elkus
ELKUS & SISSON P.C.
7100 E. Belleview Ave., Suite 101
Greenwood Village, CO  80111
(303) 567-7981
relkus@elkusandsisson.com
*Attorney for Plaintiff*