IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Case No.:   22-CV-2241-PAB-KLM

BRIAN LITTLEFIELD,

      Plaintiff,

v.

WELD COUNTY SCHOOL DISTRICT RE-5J, et al.

      Defendants.

---

**PLAINTIFF'S RESPONSE TO MOTION TO DISMISS [DOC. 40]**

---

**A.    Defendants Arnold and Anderson are not entitled to qualified immunity.**

Raising qualified immunity via a Rule 12(b)(6) motion to dismiss "subjects *the defendant* to a more challenging standard of review than would apply on summary judgment." *Peterson v. Jensen*, 371 F.3d 1199, 1201 (10th Cir. 2004) (emphasis added). "In reviewing a Rule 12(b)(6) motion to dismiss for failure to state a claim, all well-pleaded allegations in the complaint must be accepted as true and viewed 'in the light most favorable to the plaintiff.'" *Truman v. Orem City*, 1 F.4th 1227, 1235 (10th Cir. 2021) (*quoting Alvarado v. KOB-TV, L.L.C.*, 493 F.3d 1210, 1215 (10th Cir. 2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

    **1.    Littlefield has plausibly alleged that the actions of Defendants Arnold and Anderson violated Littlefield's constitutional rights.**

"In general, to establish a constitutional claim under § 1983, a plaintiff must prove four elements: (1) a violation of rights protected by the federal Constitution or created by federal statute

1

or regulation, (2) proximately caused (3) by the conduct of a 'person' (4) who acted under color of law." *Donohoe v. Hoey*, 109 Fed. Appx. 340, 354 (10th Cir. Sept. 21, 2004) (unpublished) (quotation marks and brackets omitted). In their Motion, Defendants do not dispute that they were acting under color of law.

To prevail on a First Amendment retaliation claim based on the right of expressive association, a plaintiff must allege facts that plausibly demonstrate: (1) the plaintiff's interests in engaging in the First Amendment activity outweighed the employer's interest in regulating that activity; and (2) the protected activity was a substantial motivating factor in the decision to take adverse action against the plaintiff. *Tonjes v. Park Cty. Sheriff's Office*, 300 F.Supp.3d 1308, 1328 (D. Colo. 2018). In the context of a religious association claim the "public concern" element is inapplicable. *Id.* (*citing Cillo v. City of Greenwood Village*, 739 F.3d 451, 460-61 (10th Cir. 2013)); *see Merrifield v. Bd. of County Comm'rs*, 654 F.3d 1073, 1081 (10th Cir. 2011); (*see also* Motion at 13). Defendants' Motion does not argue that the employer's interest in regulating Littlefield's religious activities outweighed Littlefield's interests in engaging in those activities. Though it is unclear whether it applies to Littlefield's first claim for relief, Defendants appear to apply the *Garcetti* test. As part of the *Garcetti* analysis, adverse action means an action that would likely chill a person of ordinary firmness from continuing to engage in the protected activity. *Couch v. Bd. of Trs. of the Mem. Hosp.*, 587 F.3d 1223, 1238 (10th Cir. 2009). Even assuming for the sake of argument the *Garcetti* test applies here,[1] and whether under *Pickering* or *Garcetti*, Littlefield has plausibly alleged that the actions of Arnold and Anderson violated Littlefield's

---

[1] Defendants do not argue the first through third elements of the *Garcetti* test. *See Couch*, 587 F.3d at 1235.

constitutional rights and the Defendants are not entitled to qualified immunity.

### a. Plausible causal connection

Despite Defendants' emphasis on temporal proximity in their Motion, temporal proximity is not the only means of showing a causal connection between Littlefield's religious activities and Defendants' misconduct. "[A] pleading alleges facts sufficient to assert a plausible claim under the First Amendment based upon a broad array of circumstances that include temporal proximity, intervening antagonism or retaliatory animus, inconsistencies in the employer's articulated reason for taking adverse action, or any other evidence of record sufficient to support the inference of causality." *Tonjes*, 300 F.Supp.3d at 1330 (quotation marks omitted). The Amended Complaint plausibly alleges a causal link between Littlefield's protected religious activities and Defendants' misconduct.

The FCA is a religious organization that holds meetings with religious motivational speeches. It was Littlefield's speech at an FCA meeting that sparked Arnold and Anderson to immediately launch their campaign to get rid of Littlefield. Arnold learned of Littlefield's speech to the FCA on February 25, 2021. (Am. Compl. (Doc. 27) at ¶ 21.) Only two days later, on February 27, 2021, Arnold downgraded Littlefield's existing performance evaluation. (*Id.* at ¶ 22.) The new purported allegations in the amended performance evaluation had not been raised prior to Littlefield's speech to the FCA. (*Id.* at ¶ 23.) In the March 1, 2021, meeting with Arnold and Anderson, Arnold made several inappropriate comments criticizing Littlefield's religion and race despite Littlefield having never proselytized about religion or politics in his role as principal of RHS. (*Id.* at ¶ 28.) During that meeting Anderson also made antagonistic remarks to Littlefield

about his religion and implying—if not outright accusing—that he was anti-LGBTQ.[2]  (*Id.* at ¶ 30.)  In the context of the rest of the meeting, these comments could only be taken as additional attacks on Littlefield's religion combined with those stated by Arnold.  The inappropriate comments by Arnold and Anderson in the March 1 meeting—which was only days after Littlefield's speech to the FCA—reveal their animosity to Littlefield's religion and dispel any doubt about the causal connection between Littlefield's religious activities and the campaign to get rid of Littlefield that was immediately set in motion by Arnold and Anderson.

On March 2, 2021, Littlefield filed a complaint about Arnold and Anderson's attack on him based on the fact that he is a conservative Christian male.  (*Id.* at ¶ 34.)  On March 6, 2021, Arnold and Anderson continued their joint attack on Littlefield and retaliated by filing a complaint against him.  (*Id.* at ¶ 35.)  The alleged issues raised by the Arnold and Anderson complaint had not been raised prior to the March 1, 2021, meeting.  (*Id.* at ¶ 37.)  Between March 6, 2021, and April 19, 2021, (*id.* at ¶¶ 38, 43), Arnold and Anderson's attack against Littlefield based on his religion and race continued with the misconduct specifically described in paragraph 38 of the Amended Complaint.  That misconduct included demoting Littlefield, a significantly adverse employment action that would chill any reasonable person from exercising their First Amendment rights.  The demotion occurred approximately two months after Littlefield's speech to the FCA, and stripped Littlefield of nearly all his significant job duties.  (*Id.* at ¶¶ 61, 71-72.)

Particularly notable is the fact that even before the investigation of the complaints began Arnold "told other RHS staff that Dr. Littlefield would not be returning to RHS the next school

---

[2] Even if Anderson did not previously know about Littlefield's speech to the FCA, she necessarily knew about it during the March 1 meeting because it was a topic of discussion.  (Am. Compl. (Doc. 27) at ¶¶ 27-30.)

4

year….." (*Id.* at ¶ 38.)  This shows that Arnold—the Superintendent of Schools—was already setting into motion the plan to ultimately get rid of Littlefield.  Having worked together with Arnold to put the plan in motion and lay the groundwork for Littlefield's removal, Anderson was able to see the plan through to its fruition even after Arnold no longer worked for the District.  (*Id.* at ¶¶ 68, 81-92.)

Defendants' misplaced focus on temporal proximity alone is exacerbated by their attempt to focus solely on two events with respect to Anderson: Littlefield's speech to the FCA and Anderson's June 1, 2021, recommendation that Littlefield's contract be non-renewed.  (Motion (Doc. 40) at 6-7.)  These were not, however, distinct and isolated events.  Rather, as the Amended Complaint adequately alleges, there were a series of events over that time that culminated in Littlefield's non-renewal.  That series of events included the inappropriate and hostile treatment of Littlefield by Arnold and Anderson in the March 1 meeting, the March 6 complaint made by Arnold and Anderson,[3] and the concerted actions of Arnold and Anderson described in paragraph 38 of the Amended Complaint.  Even if the Court focuses only on temporal proximity, therefore, the ongoing series of events show temporal proximity between Littlefield's religious activity and the multiple adverse actions against him.  When all facts relevant to the causation analysis are considered, it is even more apparent that the Amended Complaint plausibly alleges the causal link between Littlefield's protected religious activities and the misconduct of Arnold and Anderson.

        b.     *Materially adverse conduct*

Defendants myopically claim that the only adverse conduct alleged by Littlefield resulting

---

[3] That the Arnold/Anderson complaint was upheld, and Littlefield's was not, is of dubious relevance considering the District's inadequate investigation and the pressure applied to employees by Arnold and Anderson.  (Am. Compl. (Doc. 27) at ¶¶ 38, 40, 43-53.)

from his protected religious activity is the February 27, 2021, downgrading of his performance rating by Arnold. (Motion (Doc. 40) at 9.) First and foremost, even assuming for the sake of argument that this was the only alleged adverse conduct, a downgraded performance rating is sufficiently adverse.[4] Poor performance ratings, particularly for employees unprotected by tenure like Littlefield, "are adverse consequences that certainly could deter reasonable people from exercising their First Amendment rights." *Brammer-Hoelter v. Twin Peaks Charter Acad.*, 602 F.3d 1175, 1183 (10th Cir. 2010). Second, however, the downgraded performance rating is not the only adverse action alleged by Littlefield. In addition to their retaliatory complaint against Littlefield, Arnold and Anderson also worked together to harass Littlefield and demote him, taking away most of his job duties. (Am. Compl. (Doc. 27) at ¶¶ 38, 61, 71-72.) Demotion and a decrease in job responsibilities clearly constitutes adverse action. *See Daniels v. United Parcel Serv., Inc.*, 701 F.3d 620, 635 (10th Cir. 2012). The Amended Complaint plausibly alleges that the Defendants took adverse action against him that would chill any reasonable person from exercising their First Amendment rights.

        c.     *Associational rights burdened*

Littlefield has plausibly alleged that his associational rights were burdened, even when viewed through the lens of Free Exercise—which is a different analysis than Free Association—as Defendants couch their argument. "[T]he Free Exercise Clause is not limited to acts motivated by overt religious hostility or prejudice. As its language suggests, the animating ideal of the constitutional provision is to protect the 'free exercise of religion' from unwarranted governmental

---

[4] Results of performance evaluations influence salary and contract renewals. (Am. Compl. (Doc. 27) at ¶ 14.)

6

inhibition whatever its source." *Shrum v. City of Coweta*, 449 F.3d 1132, 1144 (10th Cir. 2006). "To establish a free-exercise claim, [plaintiff] must show that the government has placed a burden on the exercise of his religious beliefs or practices. A plaintiff states a claim [that his] exercise of religion is burdened if the challenged action is coercive or compulsory in nature." *Fields v. City of Tulsa*, 753 F.3d 1000, 1009 (10th Cir. 2014) (citation and quotation marks omitted). Defendants incorrectly characterize the standard as requiring that a plaintiff show a *substantial* burden. (*See* Motion (Doc. 40) at 6, 10.) Defendants rely on case law in the prison context, which is inapplicable here. *E.g., Mares v. LePage*, no. 16-cv-03082-RBJ-NYW, 2018 U.S. Dist. LEXIS 41907 at *6 (D. Colo. Mar. 13, 2018) ("In order to allege a violation of the First Amendment's Free Exercise Clause, *a prisoner-plaintiff* must show that a prison regulation substantially burdened sincerely-held religious beliefs." (emphasis added, ellipsis and quotation marks omitted)). In *Fields*, a case involving a public employee, the Tenth Circuit conspicuously omitted the requirement that a burden be "substantial." *Fields*, 753 F.3d at 1009. Even if the Court requires a showing of substantial burden, Littlefield has satisfied that standard.

Arnold directly and deliberately prevented Littlefield from attending a great portion of an important religious and social event, the Front Range Baptist Church Wild Game Dinner (the "Church Dinner"). Despite the Church Dinner having been on Littlefield's calendar since January 2021 (Am. Compl. (Doc. 27) at ¶ 105), after learning of Littlefield's FCA involvement and his complaint about the mistreatment he faced because of his religion and race Arnold deliberately sought to prevent Littlefield from attending the Church Dinner and was largely successful. The Church Dinner was scheduled to occur outside school hours. (*Id.* at ¶ 109.) Arnold, however, used a JMEA meeting as the means to block Littlefield from attending the Church Dinner. The

JMEA meeting could have been scheduled at a different time, but Arnold insisted that it be scheduled at the same time as the Church Dinner. (*Id.* at ¶ 110.) Arnold outright expressed her hostility to the Church Dinner and her desire to prevent Littlefield from attending the Church Dinner when, in response to Littlefield informing her of the Church Dinner, Arnold replied, "I don't care" and "you don't have time for that." (*Id.* at ¶ 109.) Notably, on previous occasions when Littlefield had a scheduling conflict with a JMEA meeting accommodation was made and he was not required to attend any more of the meeting than was absolutely necessary. (*Id.* at ¶¶ 111-12.) On this occasion, however, because the scheduling conflict was with a Church function, Arnold used the JMEA meeting to deny Littlefield the ability to attend the entire Church Dinner. Arnold's scheme worked and Littlefield was forced to miss a great portion of the Church Dinner. (*Id.* at ¶ 113.)

Arnold's comments to Littlefield that she didn't care about the religious event and that she felt he did not have time for the event clearly demonstrate that her actions were motivated by her hostility to Littlefield's religion. It was only because he was coerced and compelled by Arnold to attend the entire JMEA meeting that Littlefield's religious association was burdened.

Furthermore, the concerted efforts of Arnold and Anderson had a chilling effect on Littlefield's association with the FCA and attendance at FCA meetings. As a direct result of the actions of Arnold and Anderson, Littlefield felt that he had a target on his back and feared that continuing to attend FCA meetings would only provide additional ammunition for Arnold and Anderson. (*Id.* at ¶ 119-20.) Simply put, Littlefield felt pressured to stop attending these religious activities for fear of further reprisals from Arnold and Anderson. Because of the attack on him by Arnold and Anderson, Littlefield made the difficult choice to stop attending the FCA meetings.

Finally, though Littlefield refrained from proselytizing or bringing his religious beliefs into his role as Principal, the persecution because of his religion extended so far as to prevent even the mild amount of religious expression in saying "Merry Christmas" or putting up Easter decorations. (*Id.* at ¶¶ 121-26.)  In sum, Defendants cannot credibly argue that Littlefield has failed to plausibly allege that his religious association and expression were not burdened—and even substantially so—by the misconduct of Arnold and Anderson.

### 2. The at-issue law is clearly established

A constitutional right is clearly established if "'[t]he contours of [a] right [are] sufficiently clear' that every 'reasonable official would [have understood] that what he is doing violates that right.'" *Ashcroft v. al-Kidd*, 563 U.S. 731, 741, 131 S. Ct. 2074, 179 L. Ed. 2d 1149 (2011) (alterations in original) (quoting *Anderson v. Creighton*, 483 U.S. 635, 640, 107 S. Ct. 3034, 97 L. Ed. 2d 523 (1987)).  The Courts "do not require a case directly on point." *Id.* But the "dispositive question is 'whether the violative nature of *particular* conduct is clearly established.'" *Mullenix v. Luna,* 577 U.S. 7,12 (2015)(quoting *al-Kidd*, 563 U.S. at 742).  In undertaking this analysis, the Court will "look to the relevant precedents at the time of the challenged actions and the obviousness of the violation in light of them." *Milligan-Hitt v. Bd. of Trs. of Sheridan Cnty. Sch. Dist. No. 2*, 523 F.3d 1219, 1233 (10th Cir. 2008). Ordinarily, the relevant precedent for clearly-established-law purposes consists of one or more "on-point Supreme Court or published Tenth Circuit decision[s]; alternatively, 'the clearly established weight of authority from other courts must have found the law to be as the plaintiff maintains.'" *Quinn v. Young*, 780 F.3d 998, 1005 (10th Cir. 2015) (quoting *Weise v. Casper*, 593 F.3d 1163, 1167 (10th Cir. 2010).

Relevant to the issues in this case, the Supreme Court has recognized "association" as protected by the First Amendment as expressive associations for the purpose of conducting activities, such as speech, assembly, and exercise of religion. *United States Jaycees*, 468 U.S. 609, 617-18 (1984). In relation to whether the right that these individual Defendants violated was clearly established at the time of the conduct at issue, it is beyond question that the First Amendment protects public employees from discrimination based upon their First Amendment rights, which necessarily includes religious association and expression. *Mason v. Okla. Tpk. Auth.*, 115 F.3d 1442, 1451 (10th Cir. 1997) (*citing Rutan v. Republican Party of Illinois*, 497 U.S. 62, 68-69 (1990)); *see Brammer-Hoelter*, 602 F.3d at 1187 (The law is clearly established that a school administrator could not take adverse action against an employee in retaliation for that employee's First Amendment activities) [5]; *Schalk v. Gallemore*, 906 F.2d 491, 498 (10th Cir. 1990). The right to freedom of association extends to public employees being able to engage in associative activity without retaliation. *Smith v. Arkansas State Highway Employees, Local 1315*, 441 U.S. 463, 465 (1979)(per curiam); *Kennedy v. Bremerton Sch. Dist.*, 142 S. Ct. 2407, 2413 (2022) *citing Tinker* v. *Des Moines Independent Community School Dist.*, 393 U. S. 503, 506, 89 S. Ct. 733, 21 L. Ed. 2d 731(Teachers and students do not shed their First Amendment rights "at the schoolhouse gate.")

Various relationships have been sheltered under the capacious constitutional tent of freedom of association, including freedom of religion. *See, e.g., NAACP v. Button*, 371 U.S. 415, 429-30 (1963); *NAACP v. Alabama*, 357 U.S. 449, 460 (1958). Under the constitutional tent of

---

[5] *Brammer-Hoelter*, 602 F.3d 1175, is the subsequent decision from *Brammer-Hoelter v. Twin Peaks Charter Acad.*, 492 F.3d 1192 (10thCir. 2007). The 2007 opinion is hereafter identified as *Brammer-Hoelter I*.

the freedom of association, which includes religion, the law clearly establishes that disciplining a public employee based on the freedom of association is strictly forbidden. *Rampey v. Allen*, 501 F.2d 1090, 1099 (10th Cir. 1974); *see also Brammer-Hoelter I*, 492 F.3d at 1208-09 (Motion for Summary Judgement denied in public school teachers' freedom of association claim. The Court found that there was sufficient evidence to support finding of adverse employment action resulting from teachers' speech and association where the teachers' received poor performance evaluations).[6]

Here, it is incongruous with the above legal precedent to claim that these individual Defendants were not on notice that a public employee cannot be subjected to an adverse employment action due to that employee's religious beliefs and/or association with a religious organization. Yet, that is exactly what the Defense is now arguing. (*See* Motion (Doc. 40) at 12-13.) The Defense seeks to focus on the granular details of this particular case to support the proposition that there is no clearly established law that address the very specific at-issue conduct that is giving rise to Dr. Littlefield's First Amendment violation. (*Id.*) However, and as set forth above, the law does not require such a myopic view and application of facts in determining whether the law is clearly established for purposes of qualified immunity. Instead, general statements of the law can clearly establish a right for qualified immunity purposes if they apply "with obvious clarity to the specific conduct in question." *Halley v. Huckaby*, 902 F.3d 1136, 1149 (10th Cir. 2018) (*citing Hope v. Pelzer*, 536 U.S. 730, 741 (2002)). Here, the law is clearly established with "obvious clarity" that public employees (*such as teachers*) are free to associate without reprisal.

---

[6] Notably, removing job duties from an employee may also qualify as First Amendment retaliation. *See Schuler v. City of Boulder*, 189 F.3d 1304, 1310 (10th Cir. 1999).

*Smith*, 441 U.S. at 465.  Going further, the law is clearly established that freedom of association includes the right to associate with a religious organization.  *Schalk v. Gallemore*, 906 F.2d 491 (*citing Roberts v. United States Jaycees*, 468 U.S. 609, 617-18 (1984)); *NAACP v. Button*, 371 U.S. at 429-30; *NAACP v. Alabama*, 357 U.S. at 460.  Finally, the law is clearly established that a public employee cannot be subjected to adverse employment action based on a right to associate.  *Rampey*, 501 F.2d at 1099; *Brammer-Hoelter I*, 492 F.3d at 1208-09.  Thus, when these individual Defendants negatively changed Dr. Littlefield's performance evaluation, removed his job duties, and moved to terminate his position from the District, they were on notice that such actions were clearly violative of his First Amendment rights. *Id*. Thus, the Motion to Dismiss must be denied.

**B.      Littlefield's CADA Claim is Actionable**

In order to prove intentional discrimination under C.R.S. § 24-34-402, a plaintiff must first establish a "prima facie" case of discrimination. *See Colo. Civil Rights Comm'n v. Big O Tires*, 940 P.2d 397, 400 (Colo. 1997)[7].  The factors a plaintiff must establish to support a prima facie case of unfair employment practices under Colorado law are as follows: (1) an employee must show that he belongs to a protected class; (2) that the employee must prove that he was qualified for the job at issue; (3) the employee must show that he suffered an adverse employment decision despite his qualifications; and (4) the employee must establish that all the evidence in the record supports or permits an inference of unlawful discrimination. *See Bodaghi v. Dep't of Nat. Res.*, 995 P.2d 288, 297 (Colo. 2000) (*citing Texas Dep't of Community Affairs v. Burdine*, 450 U.S.

---

[7] Reviewing the Defense Motion, the Defense has not sought dismissal of Littlefield's claim concerning opposition to the unlawful practice (*i.e. retaliation*) under CADA. (*See* Motion (Doc. 40) at 13-14; *see also* Am. Compl. (Doc. 27) at ¶ 147.)

248, 253 (1981)).[8]  Here, and applying the above applicable factors, the Amended Complaint establishes the following: (1) Dr. Littlefield is a member of a protected class (*a white male and a member of a religious organization*) (Am. Compl. (Doc. 27) at ¶¶16, 17, 18, 34); (2) Dr. Littlefield was clearly qualified for the position as Principal (*id.* at ¶¶7-9); and (3) Dr. Littlefield received a negative performance evaluation, loss of job duties, and was terminated, (*id.* at ¶¶22, 70-74, 83-94).  These are all adverse employment decisions;[9] and (4) the circumstances in this case give rise to the inference that his gender and/or religion was the basis for the unlawful acts.[10] In sum, Dr. Littlefield has established a prima facie case of discrimination.  *See Bodaghi,* 995 P.2d at 297.

Despite the above, the Defense nonetheless argues that the Complaint must be dismissed, not on *any* of the above factors that have been adopted by Colorado to establish a prima facie case of discrimination under CADA, but rather on the argument that Dr. Littlefield failed to allege that "similarly situated employees were treated differently…." (*See* Motion (Doc. 40) at 13-14.)  To support their argument the Defense cites to various cases, none of which address religious discrimination.  (*Id.*)  Assuming these cases are applicable to the case-at-bar, which Dr. Littlefield does not concede they do for religious discrimination purposes, alleging "similarly situated" is not a prerequisite for establishing a prima facie case of religious discrimination and/or retaliation.  *Piercy v. Maketa*, 480 F.3d 1192, 1203 (10th Cir. 2007).[11]  Thus, there are no grounds to dismiss

---

[8] Evidence of discriminatory intent may be established by indirect evidence and reasonable inferences to establish discrimination.  *See Bodaghi*, 995 P.2d at 296.
[9] *Brammer-Hoelter I*, 492 F.3d at 1208-1209.
[10] Please refer to Section 1 of this Response which discussing the inference of discriminatory conduct.
[11] *Piercy* is not a religious discrimination case but does provide the elements for establishing a prima facie case of retaliation.  *Piercy*, 480 F.3d at 1198.  *Piercy* does not require "similarly situated" as a required element in establishing unlawful retaliation.  *Id*.

Defendants Arnold and Anderson from this action.[12]

In their motion, Defendants rely heavily on *Judson v. Walgreens Co.*, an unpublished, outlier case which disrupts decades of jurisdictions which do not support the holding that "aiding and abetting" can only apply to individuals acting within the scope of their duties under CADA.[13] In *Judson*, the court relied on *Cowing v. Commare*, a Kentucky case interpreting a Kentucky state statute and rejecting individual liability for aiding and abetting because of the "intracorporate conspiracy doctrine." *Judson v. Walgreens Co.*, 20-cv-00159-CMA-STV, 2021 WL 1207445, *4 (D. Colo. March 31, 2021) (citing *Cowing v. Commare*, 499 S.W.3d 291, 295 (Ky. Ct. App. 2016)). The *Judson* court found persuasive the holding in *Cowing* that the defendant was not acting outside his capacity as the corporation's agent, and therefore his actions were solely attributable to the corporation. *Id.* at *5 (citing *Cowing,* 499 S.W.3d at 295).

The Kentucky law analyzed in *Cowing* is fundamentally different than CADA. On its face, Kentucky law, the relevant provision of which is entitled "Conspiracy to violate chapter unlawful," either requires the active *conspiracy* of *two or more persons* or requires that an individual aid, abet, incite, compel, or coerce *another person* to engage in any of the acts made unlawful under that statute. K.R.S. § 344.280. CADA has no such requirements. Instead, the CADA provision in question is entitled "Discriminatory or unfair employment practices" and makes it unlawful "[f]or any person, whether or not an employer, an employment agency, a labor

---

[12] The undersigned concedes that *Tiger v. Powell* discusses similarly situated under *McDonnell Douglas*. However, it appears that analysis was made under Title VII and not under CADA. *See Tiger v. Powell*, 2022 U.S. Dist. Lexis 165184 * 20-25.

[13] *Thorpe v. Reading Hosp.*, No. CIV A 06-00828, 2006 U.S. Dist. LEXIS 80206, 2006 WL 3196456, at *6 (E.D. Pa. Nov. 1, 2006); *Cicchetti v. Morris Cty. Sheriff's Office*, 194 N.J. 563, 947 A.2d 626, 645 (2008); *see also, Bank v. Allied Jewish Fed'n of Colo.*, 4 F. Supp. 3d 1238, 1241 (D. Colo. 2013)(CADA section with aiding and abetting is broadly worded)

organization, or the employees or members thereof . . . [t]o aid, abet, incite, compel, or coerce **the doing of any act** defined in this section to be a discriminatory or unfair employment practice . . " C.R.S. § 24-34-402 (emphasis added). Thus, the case relied upon by Defendants to support their position that they are not liable for aiding and abetting is inapplicable here.

It would be counterintuitive to hold secondary or tangential actors individually liable for unlawful discrimination in the workplace but to insulate the primary perpetrator from similar such liability. That was not the intent of the legislature in enacting Colorado's aiding and abetting provisions. Plaintiff has alleged conduct in his Amended Complaint that if taken as true would make Defendants Arnold and Anderson guilty of aiding and abetting unlawful discrimination and retaliation. Nothing more is needed under the plain language of CADA. Defendants' argument must therefore be rejected.

## CONCLUSION

Plaintiff Littlefield respectfully requests that the Motion to Dismiss be denied in its entirety for the reasons set forth above.

Respectfully submitted February 15, 2023.

/s/ Reid J. Elkus
Reid J. Elkus
Lucas Lorenz
ELKUS & SISSON P.C.
7100 E. Belleview Ave., Suite 101
Greenwood Village, CO  80111
(303) 567-7981
relkus@elkusandsisson.com
*Attorney for Plaintiff*

## CERTIFICATE OF SERVICE

I hereby certify that I electronically filed a true and correct copy of the above with the Clerk of Court using the CM/ECF system which will send notification of such filing of all counsel of record.

/s/ Amy H. Morris
Amy H. Morris, Paralegal