IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
**Chief Judge Philip A. Brimmer**

Civil Action No. 22-cv-02241-PAB-KAS

BRIAN LITTLEFIELD,

      Plaintiff,

v.

WELD COUNTY SCHOOL DISTRICT RE-5J,
LESLIE ARNOLD, and
CARA ANDERSON,

      Defendants.

---

**ORDER**

---

      This matter comes before the Court on the Motion to Dismiss [Docket No. 40] filed by defendants Leslie Arnold and Cara Anderson ("individual defendants"). The Court has jurisdiction pursuant to 28 U.S.C. § 1331.

## I. BACKGROUND[1]

      This case arises out of a series of events that took place between January 2021 and June 2021 that culminated in the decision not to renew the employment of Dr. Brian Littlefield, the former principal of Roosevelt High School ("RHS"), which is part of Weld County School District RE-5J ("District") in Weld County, Colorado. Docket No. 27 at 2-5, ¶ 2, 9, 15. Dr. Littlefield describes himself as a "Christian white male" who "lives his life through the teachings of Jesus Christ." *Id.* at 1, 33, ¶ 161. He was the principal of

---

[1] The facts below are taken from plaintiff's amended complaint, Docket No. 27, and are presumed to be true, unless otherwise noted, for purposes of ruling on the individual defendants' motion to dismiss.

RHS from 2019 to June 1, 2021.  *Id.* at 3, 21, ¶¶ 9, 84.  Defendant Leslie Arnold was the Superintendent of Schools from July 2018 until she was terminated on May 12, 2021. *Id.* at 4, 17, ¶¶ 11, 66.  Beginning in October 2020, Dr. Littlefield reported directly to Ms. Arnold, who evaluated his performance.  *Id.* at 4, ¶¶ 12-13.  Defendant Cara Anderson was the Assistant Superintendent of Human Resources until she was terminated in December 2021.  *Id.*  at 7, 17, ¶¶ 26, 67.

Dr. Littlefield's performance for the 2020-2021 school year was "initially rated satisfactory" and that a survey conducted in January 2021 "revealed glowing accolades of Dr. Littlefield from his peers as an effective administrator."  *Id.* at 4, ¶ 15.  On the morning of February 25, 2021, Dr. Littlefield gave a motivational speech to members of the Fellowship of Christian Athletes ("FCA") before school started.  *Id.* at 5, ¶ 19.  On the same day, Ms. Arnold was informed that Dr. Littlefield was asked to speak with FCA students.[2]  *Id.* at 6, ¶ 21.

On February 26, 2021, Dr. Littlefield attended a teacher union negotiation.  *Id.* at 7, ¶ 25.  Dr. Littlefield "spent months working with teachers and the RHS administrative team preparing and planning for the negotiation meetings."  *Id.*  Days before the negotiation commenced, he requested an in-person meeting with Ms. Arnold to discuss the negotiation plan, but Ms. Arnold told him "just send me your stuff I'm too busy to meet."  *Id.*  Dr. Littlefield emailed Ms. Arnold "to obtain a block schedule, and was requesting two additional full-time teachers or FTEs."  *Id.*  The complaint does not state when he sent this email or whether Ms. Arnold responded.  On the day of negotiations

---

[2] FCA meetings occur on school campuses, but before school hours.  Docket No. 27 at 27, ¶ 117.

with the union, "when Dr. Littlefield began presenting what was prepared, which included the teacher/FTE's [sic], Ms. Arnold promptly stopped Dr. Littlefield's presentation and stated: 'I never approved those teachers/FTE's [sic] and you never asked me for them.'" *Id.*

On February 27, 2021, Ms. Arnold provided Dr. Littlefield with an amended performance evaluation. *Id.* at 6, ¶ 22. The amended evaluation included concerns that were not in the original version of the evaluation, including: "(1) having implicit biases; (2) not promoting safety and equity for all students, staff, and community; (3) failing to respond to parents and staff in a 'timely manner' or not responding to them at all; and (4) being disrespectful and insubordinate to Ms. Arnold." *Id.* Dr. Littlefield claims that these allegations are false and that, prior to receiving the amended evaluation, "he had never been counseled nor advised that there were any concerns or complaints regarding his duties as an administrator." *Id.*, ¶¶ 22-23.

On March 1, 2021, Dr. Littlefield was required to meet with Ms. Arnold, Ms. Anderson, and "various members of the RHS administration." *Id.* at 7, ¶ 26. During the meeting, Dr. Littlefield was accused of being homophobic and "struggling with Ms. Arnold because she was female." *Id.* at 7-8, ¶ 27. Dr. Littlefield does not specify who made these accusations, but he claims that they were false. *Id.* Ms. Arnold reported numerous complaints that were made against Dr. Littlefield during his tenure with RHS, which he characterizes as "unfounded accusations." *Id.* Dr. Littlefield was never told or advised that there were any complaints made against him before this meeting. *Id.* at 7, ¶ 27 n.2. Ms. Arnold made the following comments:

- "Brian, you are not at a Christian School."

- Dr. Littlefield was accused of not including or being inclusive of children because of his values and religious beliefs.
- Dr. Littlefield has a "large amount of bias."
- "Nobody cares about your values or religion[.]"
- "Brian you don't understand your White Privilege, you need to learn to keep it in check[.]"
- "I have a sense that you struggle with my being a female leader"
- "If you can't start acting BLUE, then you need to start learning to act like it [This is in reference to him being a religious conservative]."
- "Dr. Littlefield was told that he is a 'conservative religious white male and that faculty and staff didn't feel comfortable coming to [him] with issues.'"

*Id.* at 8, ¶ 28 (footnotes omitted).  Ms. Anderson told Dr. Littlefield that she "didn't share the same religion as [Dr. Littlefield] and that she was a supporter of LGBTQ" and asked Dr. Littlefield whether he had a "problem with her."  *Id.* at 8-9, ¶ 30.

On March 2, 2021, Dr. Littlefield filed a formal complaint with the president of the Board of Education ("Littlefield Complaint") against Ms. Arnold and Ms. Anderson based on their conduct at the March 1, 2021 meeting.  *Id.* at 9-10, ¶¶ 33-34.  The Littlefield Complaint alleged that Ms. Arnold and Ms. Anderson subjected Dr. Littlefield to discrimination for being a "conservative Christian male" and created a hostile work environment.  *Id.* at 10, ¶ 34.

On March 6, 2021, Ms. Arnold and Ms. Anderson filed a formal complaint with the president of the Board of Education ("Arnold/Anderson Complaint") against Dr. Littlefield alleging that he engaged in the following conduct: "inappropriate response to race issues; derogatory comments against LGBTQ individuals; engaged in gender inequity; lack of responsiveness on bullying issues; unpreparedness for union negotiations; failing to lead on safety measures; and using derogatory terms."  *Id.*, ¶¶ 35-36.  "[N]one of the issues identified in the Arnold/Anderson complaint were ever

4

raised as issues prior to March 1, 2021." *Id.*, ¶ 37.  Dr. Littlefield alleges that Ms. Arnold

and Ms. Anderson filed their complaint in retaliation for his filing of the Littlefield

Complaint.  *Id.* at 10, ¶ 35.

On April 19, 2021, the District sustained the following allegations from the

Arnold/Anderson Complaint against Dr. Littlefield: "(1) not responding appropriately with

regard to race-related issues; (2) making derogatory comments regarding the LBGTQ

community; (3) treating female leaders differently than male leaders; (4) not being

responsive to student and parent concerns about bullying; (5) not being prepared for the

[Johnstown-Milliken Educators Association] negotiations; (6) not taking the lead on

timely implementing Safety Measures at the high school; and (7) using a derogatory

slang in addressing students as 'honyocks.'"  *Id.*  at 14-15, ¶ 55.  The District

determined that the allegations in the Littlefield Complaint were unsubstantiated.  *Id.* at

15, ¶ 58.

 On April 27, 2021, the District issued Dr. Littlefield a written warning regarding

the sustained allegations.  *Id.*, ¶ 60.  Sometime between April 29 and May 3, 2021, Ms.

Arnold "made the determination that Dr. Littlefield would no longer be the head Principal

of RHS but demoted him to the position of 'co-Principal' with Rebecca Albert."  *Id.* 17,

¶ 70.  Ms. Arnold made the recommendation that his position be changed after she and

Ms. Anderson "were 'cleared' of having discriminated against Dr. Littlefield."  *Id.* at 20,

¶ 77.  The demotion was not one of the directives set forth in the written warning, but it

was approved by the District.  *Id.* at 17, ¶ 70.  As co-principal, Dr. Littlefield had fewer

responsibilities than he had as principal.  *Id.* at 17-19, ¶¶ 71-72.  Dr. Littlefield alleges

that "[t]he job duties that [he] had prior to filing [the Littlefield Complaint] were given

almost entirely to Ms. Albert," and that "virtually everything Dr. Littlefield did had to go through Ms. Albert first." *Id.* at 19, ¶¶ 73-74.

On May 12, 2021, the Board of Education terminated Ms. Arnold. *Id.* at 17, ¶ 66. "[U]nder District policy, Ms. Anderson was delegated the authority by Ms. Anderson to discipline employees, such as Dr. Littlefield." *Id.* at 21, ¶ 82. On June 1, 2021, Dr. Littlefield was called to a meeting with Ms. Anderson, during which she advised Dr. Littlefield that he had violated several directives outlined in the written warning and, as a consequence, his contract with the District would not be renewed. *Id.,* ¶ 84. The decision not to renew Dr. Littlefield's contract had been voted on and approved by the Board of Education. *Id.* Ms. Anderson "did not recuse herself from the decision-making process when it was decided to terminate [his] employment despite Ms. Anderson being a named party in [the Littlefield Complaint]" and that the District did not require her to recuse herself even though it was aware of the Littlefield Complaint. *Id.* at 23, ¶¶ 90-91. Ms. Anderson recommended to the District that Dr. Littlefield's contract not be renewed. *Id.* at 24, ¶ 92. Dr. Littlefield alleges that there was no legitimate basis to non-renew his employment. *Id.,* ¶ 97.

In the June 1, 2021 meeting, Ms. Anderson told Dr. Littlefield that he had violated the directives in the written warning as follows: "(1) Dr. Littlefield failed to give notice to the Board of Education for non-renewing probationary teachers; (2) Dr. Littlefield's recommendation for non-renewal was made to the Board rather than through the 'chain of command'; (3) Dr. Littlefield purportedly failed to follow the evaluation process before non-renewing the probationary teachers; and (4) Dr. Littlefield failed to delegate staffing responsibilities to his co-Principal." *Id.* at 22, ¶ 85. Only (3) and (4) were the subject of

the written warning.  *Id.*, ¶ 86.  Dr. Littlefield "completed all of the evaluations he was required to undertake as the Principal of RHS" and "did in fact delegate faculty/staff decisions to his co-Principal."  *Id.* at 23, ¶ 88.  There was no "formal investigation to determine whether there was actual merit to support Ms. Anderson's conclusions."  *Id.*, ¶ 89.  Accordingly, Dr. Littlefield claims that "there was no legitimate basis to non-renew [his] employment."  *Id.* at 24, ¶ 97.

The Equal Employment Opportunity Commission and the Colorado Civil Rights Division issued Dr. Littlefield right to sue letters.  *Id.* at 28, ¶ 127.  Dr. Littlefield brings two claims against the individual defendants: (1) "Unlawful Retaliation for Freedom of Association" in violation of the First Amendment; and (2) "Discrimination or unfair employment practice" in violation of the Colorado Anti-Discrimination Act ("CADA"), Colo. Rev. Stat. § 24-34-402.  Docket No. 27 at 29-33, ¶¶ 128-159.[3]  The individual defendants seek to dismiss the CADA claim against them on the basis that Dr. Littlefield has failed to state a claim upon which relief may be granted and that the Court lacks subject matter jurisdiction over his CADA claims against them because he failed to exhaust administrative remedies.  Docket Nos. 40, 46.  The individual defendants also assert qualified immunity as to Dr. Littlefield's first claim.  Docket No. 40 at 4.

## II. LEGAL STANDARD

### A.  12(b)(1)

Dismissal pursuant to Federal Rule of Civil Procedure 12(b)(1) is appropriate if the Court lacks subject matter jurisdiction over claims for relief asserted in the

---

[3] Dr. Littlefield's third claim, retaliation in violation of Title VII, is alleged only against the District.  Docket No. 27 at 33-35, ¶¶ 160-68.

complaint.  Rule 12(b)(1) challenges are generally presented in one of two forms: "[t]he moving party may (1) facially attack the complaint' s allegations as to the existence of subject matter jurisdiction, or (2) go beyond allegations contained in the complaint by presenting evidence to challenge the factual basis upon which subject matter jurisdiction rests."  *Merrill Lynch Bus. Fin. Servs., Inc. v. Nudell*, 363 F.3d 1072, 1074 (10th Cir. 2004) (quoting *Maestas v. Lujan*, 351 F.3d 1001, 1013 (10th Cir. 2003)). Ultimately, plaintiff has "[t]he burden of establishing subject matter jurisdiction" because he is "the party asserting jurisdiction."  *Port City Props. v. Union Pac. R.R. Co.*, 518 F.3d 1186, 1189 (10th Cir. 2008).

### B.  12(b)(6)

To survive a motion to dismiss under Rule 12(b)(6), a complaint must allege enough factual matter that, taken as true, makes the plaintiff's "claim to relief . . . plausible on its face."  *Khalik v. United Air Lines*, 671 F.3d 1188, 1190 (10th Cir. 2012) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570, (2007)).  The Court must "accept all the well-pleaded allegations of the complaint as true and must construe them in the light most favorable to the plaintiff."  *Alvarado v. KOB-TV, LLC*, 493 F.3d 1210, 1215 (10th Cir. 2007).  However, if a complaint's allegations are "so general that they encompass a wide swath of conduct, much of it innocent," then the plaintiff has not stated a plausible claim.  *Khalik*, 671 F.3d at 1191 (citation omitted).  Thus, even though modern rules of pleading are somewhat forgiving, "a complaint still must contain either direct or inferential allegations respecting all the material elements necessary to sustain a recovery under some viable legal theory."  *Bryson v. Gonzales*, 534 F.3d 1282, 1286 (10th Cir. 2008) (alterations omitted).

### C.  Qualified Immunity

"Qualified immunity balances two important interests – the need to hold public officials accountable when they exercise power irresponsibly and the need to shield officials from harassment, distraction, and liability when they perform their duties reasonably."  *Pearson v. Callahan*, 555 U.S. 223, 231 (2009).  However, a plaintiff facing a qualified immunity challenge still does not have a heightened pleading standard.  *Currier v. Doran*, 242 F.3d 905, 916-17 (10th Cir. 2001).

Under the doctrine of qualified immunity, "government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known."  *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982).  Thus, to survive a motion to dismiss under Rule 12(b)(6) "where a qualified immunity defense is implicated, the plaintiff 'must allege facts sufficient to show (assuming they are true) that the defendants plausibly violated their constitutional rights.'"  *Hale v. Duvall*, 268 F. Supp. 3d 1161, 1164 (D. Colo. 2017) (quoting *Robbins v. Okla. ex rel. Dep't of Human Servs.*, 519 F.3d 1242, 1249 (10th Cir. 2008)).  When a defendant raises the defense of qualified immunity, a "plaintiff carries a two-part burden to show: (1) that the defendant's actions violated a federal constitutional or statutory right, and, if so, (2) that the right was clearly established at the time of the defendant's unlawful conduct."  *T.D. v. Patton*, 868 F.3d 1209, 1220 (10th Cir. 2017) (internal quotation marks omitted).  Courts are "permitted to exercise their sound discretion in deciding which of the two prongs of the qualified immunity analysis should be

addressed first in light of the circumstances in the particular case." *Pearson*, 555 U.S. at 236.

### D.  Administrative Exhaustion

CADA requires a plaintiff to fully exhaust his administrative remedies before filing a lawsuit. *Clayton v. Dreamstyle Remodeling of Colo., LLC*, No. 20-cv-02096-KMT, 2021 WL 4078911, at *5 (D. Colo. Sept. 7, 2021) (citing Colo. Rev. Stat. § 24-34-306(14)); *Brooke v. Restaurant Servs., Inc.*, 906 P.2d 66, 72 (Colo. 1995); *City of Colo. Springs v. Conners*, 993 P.2d 1167, 1169 n.3 (Colo. 2000) (CADA's exhaustion requirement is a "condition precedent to bringing an action in district court"); *Zapata v. Colo. Christian Univ.*, No. 18-cv-02529-CMA-NYW, 2019 WL 1544179, at *7 (D. Colo. Mar. 15, 2019) (noting that CADA's exhaustion requirement applies equally to suits brought in federal court).

Colo Rev. Stat. § 24-34-306(14) states that "[n]o person may file a civil action in a district court in this state based on an alleged discriminatory or unfair practice prohibited by part[ ] 4[4] . . . [of CADA] without first exhausting the proceedings and remedies available to the person under this part 3." Colo. Rev. Stat § 24-34-306(14) (footnote added).  Part 3 of CADA states that

> Any person claiming to be aggrieved by a discriminatory or an unfair practice as defined by parts 4 to 7 of this article 34 may, by oneself or through the person's attorney, make, sign, and file with the division a verified written charge stating the name and address of the respondent alleged to have committed the discriminatory or unfair practice, setting forth the particulars of the alleged discriminatory or unfair practice, and containing any other information required by the division.

---

[4] Dr. Littlefield alleges a violation of part 4 of CADA.  Docket No. 27 at 31-33, ¶¶ 145-159.

Colo. Rev. Stat. § 24-34-306(1)(a)(I).  "The filing of such a charge is a prerequisite to the filing of a civil action."  *Bank v. Allied Jewish Federation of Colorado*, 4 F. Supp. 3d 1238, 1242 (D. Colo. 2013).

## III.  ANALYSIS

### A.  First Amendment Retaliation

Dr. Littlefield's first cause of action is for "unlawful retaliation for freedom of association" in violation of the First Amendment under 28 U.S.C. § 1983.  Docket No. 27 at 29-31, ¶¶ 128-144.  The Supreme Court recognizes the "constitutionally protected 'freedom of association' in two distinct senses."  *Roberts v. United States Jaycees,* 468 U.S. 609, 617 (1984).  The freedom of "intrinsic" or "intimate" association protects "certain intimate human relationships" while the freedom of "expressive" or "instrumental" association protects the "right to associate for the purpose of engaging in those activities protected by the First Amendment."  *Id.* at 617-618; *see also Merrifield v. Board of Cnty. Comm'rs,* 654 F.3d 1073, 1080 (10th Cir. 2011) ("the two senses are sometimes labeled as the 'intrinsic' sense, which relates to certain intimate human interactions, and the 'instrumental' sense, which relates to associations necessary to engage in the enumerated First Amendment rights.").  Regarding instrumental or expressive association, the Supreme Court has held that "implicit in the right to engage in activities protected by the First Amendment [is] a corresponding right to associate with others in pursuit of a wide variety of political, social, economic, educational, religious, and cultural ends," explaining that "[a]n individual's freedom" to engage in First Amendment activities requires "a correlative freedom to engage in group effort toward those ends."  *Roberts*, 468 U.S. at 622.  A government actor may unconstitutionally

infringe upon the freedom of association if it "impos[es] penalties or withhold[s] benefits from individuals because of their membership in a disfavored group." *Id.* (citing *Healy v. James*, 408 U.S. 169, 180-84 (1972) (holding that college's denial of recognition to students seeking to form a local chapter of Students for a Democratic Society implicated the students' First Amendment associational rights)).

      Dr. Littlefield's complaint alleges that he "engaged in the constitutionally protected activity of aligning himself with his Christian faith[5] by speaking openly of his faith to the [FCA]."  Docket No. 27 at 29, ¶ 131.  Dr. Littlefield alleges that, "[a]s a teacher and as an athletic coach in the past, [he] has been a sponsor of the [FCA]," though he does not allege that he was a sponsor of the organization while he was serving as principal of RHS.  *Id.* at 5, ¶ 17.  Dr. Littlefield further alleges that he "openly

_____

[5] Dr. Littlefield also alleges that Ms. Arnold and Ms. Anderson were hostile toward him because of his "affiliation with Christianity" and his Christian faith.  Docket No. 27 at 29, ¶ 132.  However, Supreme Court precedent on associational rights under the First Amendment makes it clear that the "freedom of association" in the instrumental sense refers to the rights of defined groups and the individuals that they are comprised of.  *See, e.g., Roberts*, 468 U.S. at 617, 622 (holding that the freedom of association protects the "freedom to engage in group effort toward" protected First Amendment activities); *Boy Scouts of America v. Dale*, 530 U.S. 640, 648 (2000) ("The forced inclusion of an unwanted person in a group infringes the group's freedom of expressive association if the presence of that person affects in a significant way the group's ability to advocate public or private viewpoints.") (citing *New York State Club Ass'n, Inc. v. City of New York*, 487 U.S. 1, 13 (1988)); *City of Dallas v. Stanglin*, 490 U.S. 19, 24-25 (1989) (holding that ordinance restricting admission to certain dance halls to persons between the ages of 14 and 18 did not implicate the freedom of association partly because the patrons were not "members of any organized association" and "[m]ost [were] strangers to one another"); *Tonjes v. Park Cnty. Sheriff's Office*, 300 F. Supp. 3d 1308, 1327 (D. Colo. 2018) ("*Roberts* and its progeny make clear that the freedom of expressive association protects the collective interests of a group whose members share common interests or objectives.").  Accordingly, Dr. Littlefield's "affiliation with" Christianity generally is not the type of "association" protected by the freedom of association under the First Amendment.

associated himself as a member of the Christian Church."[6]  *Id.* at 29, ¶ 130.

Accordingly, the Court will analyze Dr. Littlefield's claim for First Amendment retaliation

in terms of his association with the Christian Church and the FCA.

       The Tenth Circuit has held that, because "[t]here is no 'generalized right of free

association,'" a plaintiff alleging interference with his First Amendment associational

rights must allege that the defendant's interference with association "intruded on

another constitutional right."  *Dillon v. Twin Peaks Charter Academy,* 406 F. App'x 253,

259-60 (10th Cir. 2010) (unpublished).  In keeping with this principle, the Tenth Circuit

analyzes First Amendment retaliation claims based on instrumental association

"according to the First Amendment conduct the associational conduct promotes."

*Harrison v. Bd. of Cnty. Comm'rs of Cnty. of Larimer*, No. 11-cv-03407-MSK-KMT, 2013

WL  950785, at *12 (D. Colo. Mar. 12, 2013) (citing *Merrifield*, 654 F.3d at 1083).  In

order to evaluate whether Dr. Littlefield has stated a claim for First Amendment

retaliation for instrumental association with the FCA and the Christian Church, the Court

must first determine what First Amendment conduct the complaint alleges that these

organizations promote.  The complaint alleges that the FCA is "an organization that

focuses on empowering coaches and athletes through the teachings of Jesus Christ"

and that it "has Christian youths listening to religious motivational speeches about living

a pious life."  Docket No. 27 at 5, 27, ¶¶ 17, 116.  The complaint does not allege the

---

[6] It is not clear from Dr. Littlefield's complaint whether his allegation that he is "a member of the Christian Church," Docket No. 27 at 29, ¶ 129, means that he practices Christianity, that he is a member of the broader Christian community, or that he is a member of an organized group called the Christian Church.  The Court will interpret Dr. Littlefield's statement as alleging his membership in an organized, defined group called the Christian Church, comparable to the Catholic Church or the Front Range Baptist Church referenced elsewhere in Dr. Littlefield's complaint.  *See, e.g.*, *id.* at 25, ¶ 103.

conduct that the Christian Church promotes.  Accordingly, the Court will analyze Dr.
Littlefield's First Amendment retaliation claim in terms of retaliation for the free exercise
of religion.

Neither the Supreme Court nor the Tenth Circuit has established a test to
determine the validity of a government employee's retaliation claim based on the free
exercise of religion.  However, in *Chavez v. Department of Education*, No. 15-cv-01602-
RM-CBS, 2016 WL 11692350, at *6 (D. Colo. July 18, 2016), the court considered such
a claim and held that, "[a]lthough the law is not necessarily 100 percent clear, it appears
that a First Amendment retaliation claim requires a plaintiff to allege that her protected
activity was a substantial or motivating factor behind any adverse employment action."
(citing *Walton v. Powell*, 821 F.3d 1204, 1211-12 (10th Cir. 2016)).  The *Chavez* court
further explained that "an adverse employment action is one that would 'deter a
reasonable person from exercising [her] First Amendment rights.'"  *Id.* (quoting *Couch v.
Bd. of Trustees of Mem'l Hosp. of Carbon Cnty.*, 587 F.3d 1223, 1238 (10th Cir. 2009)
(considering whether alleged employment actions were sufficiently adverse to sustain a
speech-based First Amendment retaliation claim)).  The Court agrees with *Chavez* that
these are two elements of a test for a government employee who alleges a First
Amendment retaliation claim based on the free exercise of religion.  The Court will
therefore determine whether Dr. Littlefield has adequately pled his First Amendment
retaliation claim based on whether he has plausibly alleged that (1) he suffered an
adverse employment action that was substantially motivated by his association with the
FCA or the Christian Church and (2) the adverse employment action would deter a

reasonable person from exercising his right to associate for the purpose of the free exercise of religion.

The individual defendants urge the Court to dismiss Dr. Littlefield's first claim against Ms. Arnold and Ms. Anderson on the following grounds: (1) the complaint does not plausibly allege that the actions taken by Ms. Arnold and Ms. Anderson were motivated by his association with the FCA or Christian Church; (2) the complaint does not plausibly allege that Dr. Littlefield suffered materially adverse employment actions; (3) the complaint does not plausibly allege that Dr. Littlefield's right to associate with the FCA or Christian Church were burdened;[7] and (4) Ms. Arnold and Ms. Anderson did not violate Dr. Littlefield's clearly established First Amendment rights.  Docket No. 40 at 6-13.  The Court will evaluate defendants' arguments separately as to each defendant.

---

[7] The individual defendants argue that, "[t]o state a retaliation claim under the Free Exercise Clause, Plaintiff must have plausibly alleged, in part, that the exercise of his religious beliefs were substantially burdened."  Docket No. 40 at 10 (citing *Colorado Springs Fellowship Church v. Williams,* No. 19-cv-02024-WJM-KMT, 2021 WL 2156230, at *3 (D. Colo. May 27, 2021); *Mares v. LePage*, No. 16-cv-03082-RBJ-NYW, 2018 WL 1312814, at *3 (D. Colo. Mar. 13, 2018)).  However, the cases that defendants cite concerned free exercise claims, not claims for First Amendment retaliation based on free exercise.  *See Williams*, 2021 WL 2156230, at *2; *LePage*, 2018 WL 1312814, at *2-3.  Defendants have cited no case, and the Court is aware of none, supporting the argument that a plaintiff bringing a First Amendment retaliation claim based on free exercise must allege that the defendant substantially burdened the exercise of plaintiff's religious beliefs.  However, even if the Court were to consider whether Dr. Littlefield has plausibly alleged that the exercise of his religious beliefs was burdened, Dr. Littlefield would still state a claim, since his complaint alleges that, after his March 2021 meeting with Ms. Arnold and Ms. Anderson, he ceased attending FCA meetings because he felt that "he had a target on his back."  Docket No. 27 at 27, ¶¶ 118-19.  *See Bauchman for Bauchman v. West High Sch.*, 132 F.3d 542, 557 (10th Cir. 1997) ("A plaintiff states a claim her exercise of religion is burdened if the challenged action is coercive . . . in nature.").

### 1. *Ms. Anderson*

#### a. Constitutional Violation

The Court finds that Dr. Littlefield's complaint plausibly alleges that he associated with two groups—the FCA and the Christian Church.  Docket No. 27 at 29, ¶¶ 130-31.  Accordingly, to sustain his first cause of action against Ms. Anderson, Dr. Littlefield must plausibly allege his association with these groups was a "substantial" or "motivating" factor behind an adverse employment action that Ms. Anderson took against him.  *See Chavez*, 2016 WL 11692350, at *6; *Walton*, 821 F.3d at 1211-12.  "[A] pleading alleges facts sufficient to assert a plausible [retaliation] claim under the First Amendment based upon a 'broad array' of circumstances that include temporal proximity, intervening antagonism or retaliatory animus, inconsistencies in the employer's articulated reason for taking adverse action, or 'any other evidence of record sufficient to support the inference of causality.'"  *Tonjes*, 300 F. Supp. 3d at 1330 (quoting *Benhe v. Halstead,* 2014 WL 1689950, at *15 (M.D. Penn. Apr. 29, 2014)).

Dr. Littlefield alleges that at the March 1, 2021 meeting Ms. Anderson "displayed displeasure with [him] by stating that she 'didn't share the same religion as [Dr. Littlefield].'"  Docket No. 28 at 8, ¶ 30.  However, nowhere in the complaint does Dr. Littlefield allege that Ms. Anderson remarked on his association with the FCA or the Christian Church[8] or that she knew that he was asked to speak with the FCA, was a

---

[8] Dr. Littlefield's complaint does not allege that Ms. Anderson's statement that she "didn't share the same religion" as Dr. Littlefield was a reference to his association with the FCA or the Christian Church.  Docket No. 27 at 8-9, ¶ 30.  It appears to categorize it as a statement "regarding his religion," rather than a statement regarding his association with either organization.  *Id.* at 9, ¶ 31.  This interpretation is supported by Dr. Littlefield's response to defendants' motion which categorizes the statement as an "antagonistic remark[ ] to [Dr.] Littlefield about his religion."  Docket No. 43 at 3-4.

former sponsor of the FCA, or was a member of the Christian Church.  Docket No. 27.

This omission is fatal to Dr. Littlefield's retaliation claim against Ms. Anderson, since he

cannot plausibly allege that his association with the FCA or the Christian Church was a

"substantial" or "motivating" factor behind her alleged retaliatory actions in absence of

an allegation that she knew about these associations.  *See Hook v. Regents of*

*University of California*, 394 F. App'x 522, 539 (10th Cir. 2010) (unpublished)

("Axiomatic to establishing causation in [the First Amendment retaliation] context is

proof that the employer knew of the employee's protected conduct.") (collecting cases).

Accordingly, the Court will dismiss Dr. Littlefield's first cause of action against Ms.

Anderson.

### 2. *Ms. Arnold*

#### a. Constitutional Violation

To state a claim that Ms. Arnold unconstitutionally retaliated against Dr. Littlefield

for exercising his freedom of association, the complaint must plausibly allege that Ms.

Arnold (1) took adverse employment action against him that would deter a reasonable

person from exercising his associational rights and (2) that the adverse employment

action was substantially motivated by his association with the FCA or the Christian

Church.  *See Chavez,* 2016 WL 11692350, at *6.

The Court will first consider whether Ms. Arnold took adverse employment action

against Dr. Littlefield that would deter a reasonable person from exercising his

associational rights.  The individual defendants argue that Dr. Littlefield has not

plausibly alleged this element because his allegation that Ms. Arnold changed her

performance evaluation of him is insufficient to maintain a retaliation claim.  Docket No.

40 at 9-10.  Dr. Littlefield responds that a "downgraded performance rating" is sufficiently adverse to sustain a retaliation claim and argues that his complaint also alleges that Ms. Arnold demoted him, resulting in a decrease in his job responsibilities. Docket No. 43 at 6.

Dr. Littlefield's complaint alleges that, after Ms. Arnold learned that he had spoken to the FCA, Ms. Arnold provided him with an amended performance evaluation that "identified concerns and issues" that "were not in the original version of the evaluation."  Docket No. 27 at 6, ¶ 22.  Dr. Littlefield's complaint further alleges that Ms. Arnold "made the determination that Dr. Littlefield would no longer be the head Principal of RHS but demoted him to the position of 'co-Principal.'"  *Id.* at 17, ¶ 70.  Dr. Littlefield alleges that "[b]eing a co-Principal . . . caused a decrease in [his] responsibilities and duties" and that he "was essentially stripped of all of his job duties."  *Id.* at 17-19, ¶¶ 71-72. [9]  The Tenth Circuit has held that poor performance evaluations and removing job duties can constitute adverse employment actions supporting a First Amendment retaliation claim.  *Brammer-Hoelter v. Twin Peaks Charter Academy,* 602 F.3d 1175, 1183, 1187 (10th Cir. 2010); *Schuler v. City of Boulder*, 189 F.3d 1304, 1310 (10th Cir. 1999).  Accordingly, Dr. Littlefield has plausibly alleged that Ms. Arnold took adverse employment action against him.

---

[9] Dr. Littlefield's complaint also alleges that Ms. Arnold required him to attend the entirety of a Johnstown-Milliken Educators Association meeting, which caused him to "miss a great portion of the Front Range Baptist Church Wild Game Dinner," which he describes as both a social function and an important religious event.  Docket No. 27 at 27, ¶ 113.  However, Dr. Littlefield does not allege that this was an adverse employment action.  Therefore, this allegation cannot form the basis of his retaliation claim.

In order to state a claim for First Amendment retaliation based on adverse employment actions, Dr. Littlefield must plausibly allege that his association with the FCA or the Christian Church was a substantial or motivating factor for Mr. Arnold's decision to change his performance evaluation and demote him. *See Chavez,* 2016 WL 11692350, at *6; *Walton,* 821 F.3d at 1211-12. As discussed above, a plaintiff may assert a retaliation claim by alleging circumstances including "temporal proximity, intervening antagonism or retaliatory animus, inconsistencies in the employer's articulated reason for taking adverse action, or any other evidence of record sufficient to support the inference of causality." *Tonjes*, 300 F. Supp. 3d at 1330 (quotation marks and citation omitted).

Dr. Littlefield's complaint contains no allegations that Ms. Arnold knew he was a member of an organized group called the Christian Church,[10] Docket No. 27, and therefore he has failed to allege that she retaliated against him based on his association with that group. *See Hook*, 394 F. App'x at 539. However, in regard to the FCA, the complaint alleges that, on the day that Dr. Littlefield spoke with the students of the FCA, February 25, 2021, Ms. Arnold was informed that he had done so. Docket No. 27 at 6, ¶ 21. The complaint alleges that Ms. Arnold changed her performance review of Dr. Littlefield from positive to negative on February 27, 2021, two days after she learned of his association with the FCA. *Id.* at 4, 6, ¶¶ 15, 21-23. In the context of retaliation for employee speech, the Tenth Circuit has held that "[a]n employer's knowledge of the

---

[10] As discussed above, practicing Christianity or being part of the broader Christian community is not the type of "association" protected by the First Amendment. Accordingly, Dr. Littlefield's allegations that Ms. Arnold knew that he was a Christian, *see, e.g.,* Docket No. 27 at 8, ¶ 28, are irrelevant to whether Ms. Arnold retaliated against him for his associational conduct under the First Amendment.

protected speech, together with *close* temporal proximity between the speech and challenged action, may be sufficiently probative causation." *Maestas v. Segura*, 416 F.3d 1182, 1189 (10th Cir. 2005) (citation omitted).  Although the plaintiff in *Maestas* alleged retaliation based on speech, not free exercise of religion, the Court finds that the principle outlined by the Tenth Circuit in that case—that a plaintiff may demonstrate retaliatory motive by alleging his employer's knowledge of his First Amendment activity and close temporal proximity between the First Amendment activity and the alleged retaliation—is applicable here.  Dr. Littlefield has plausibly alleged that his association with the FCA was a "substantial" or "motivating" factor for Ms. Arnold's amended performance review.

The individual defendants argue that the complaint does not plausibly allege that Dr. Littlefield's association with the FCA was a substantial or motivating factor in Ms. Arnold's decision to demote him because he "attributes this event to the [Littlefield Complaint] he filed with the District, and not his association/meeting with the FCA" and the complaint "shows the numerous non-discriminatory bases for [Ms.] Arnold's conduct."  Docket No. 40 at 8.  However, at the motion to dismiss stage, the Court construes all well-pleaded facts in the complaint in the light most favorable to the plaintiff, and therefore it will not dismiss Dr. Littlefield's claim as it pertains to the demotion merely because certain allegations could be construed as intervening events or as non-discriminatory bases for the demotion.  *See Alvarado*, 493 F.3d at 1215.

The individual defendants argue that Dr. Littlefield's allegation that he was demoted approximately two months after Ms. Arnold learned of his association with the FCA "undermin[es] temporal proximity."  Docket No. 40 at 8; *see* Docket No. 27 at 6, 27,

¶¶ 21, 70.  Although the Tenth Circuit has held that an alleged retaliatory act that took place three months after a plaintiff's First Amendment conduct cannot support the inference of retaliatory motive based on temporal proximity alone, *Lauck v. Campbell Cnty.*, 627 F.3d 805, 815 (10th Cir. 2010), it has not considered whether a delay of two months will support an inference of retaliatory motive.  Therefore, the Court will look to allegations in the complaint constituting circumstantial evidence of a retaliatory motive for additional support.

Where temporal proximity alone is insufficient, "the presentation of circumstantial evidence such as . . . a chronology of events . . . may be sufficient to support allegations of retaliation" at the motion to dismiss stage.  *Hunter v. Romero*, No. 19-cv-02969-CMA-NYW, 2021 WL 4947235, at *10 (D. Colo. July 2, 2021) (quoting *Davis v. Hoffman,* No. 03-cv-01956-WYD-BNB, 2006 WL 1409433 at *7 (D. Colo. May 18, 2006) (citing *Smith v. Maschner*, 899 F.2d 940, 949 (10th Cir. 1990))) (alteration omitted).  The complaint alleges the following series of events: (1) on February 25, 2021, Dr. Littlefield made a speech to the FCA and Ms. Arnold became aware of the speech; (2) on February 27, 2021, Ms. Arnold changed her positive performance review of Dr. Littlefield to a negative one; and (3) around April 29, 2021 to May 3, 2021, Ms. Arnold demoted Dr. Littlefield.  Docket No. 27 at 6, 17, ¶¶ 21-22, 70.  Given these allegations, Court finds that Dr. Littlefield has plausibly alleged a "chronology of events" that, in combination with his allegation that he was demoted two months after Ms. Arnold became aware of his association with the FCA, plausibly states a claim for First Amendment retaliation for this association.  *See Hunter*, 2021 WL 4947235, at *10 (finding that plaintiff had alleged a chronology of events supporting his First Amendment retaliation claim where

he identified one instance of defendant confronting him about his First Amendment conduct that occurred between the time of the conduct and the alleged retaliation).

Taking Dr. Littlefield's well-pleaded allegations as true and construing them in the light most favorable to him, the Court finds that Dr. Littlefield has plausibly alleged that Ms. Arnold retaliated against him for his association with the FCA in violation of his First Amendment rights when she issued a negative performance review and demoted him.

### b. Clearly Established

The individual defendants argue that Dr. Littlefield is unable to show a clearly established violation of his First Amendment rights.  Docket No. 40 at 12-13.  In a First Amendment retaliation case brought by teachers against a school administrator, the Tenth Circuit held that it was clearly established that the administrator could not give the teachers poor performance evaluations in retaliation for the teachers' exercise of their free speech and associational rights. *Brammer-Hoelter*, 602 F.3d at 1187.  Similarly, the Tenth Circuit held in *Schuler v. City of Boulder*, 189 F.3d 1304, 1310 (10th Cir. 1999), that defendants retaliated against the employee-plaintiff for her protected speech by giving her a low score on her performance evaluation and reducing her job duties, and that it was clearly established that such retaliation was unconstitutional.  At the time of Ms. Arnold's amended performance review, the Court finds it was clearly established that it is a violation of the First Amendment for an employer to negatively review an employee's performance or demote him and reduce his job duties in retaliation for his First Amendment activities.

Therefore, the Court concludes that, taking the well-pleaded allegations in the complaint as true, Dr. Littlefield has plausibly alleged that Ms. Arnold retaliated against

him for his association with the FCA in violation of his First Amendment rights when she

issued a negative performance review and demoted him.   The Court will not dismiss Dr.

Littlefield's first cause of action against Ms. Arnold

### B.  Discrimination or Unfair Employment Practice Violation under Colo. Rev. Stat. § 24-34-402

Dr. Littlefield's second cause of action is a claim for discrimination or unfair

employment practice in violation of Colo. Rev. Stat § 24-34-40 against all defendants.

Docket No. 27 at 31-33, ¶¶ 145-159.  The individual defendants argue that this claim

fails because (1) Dr. Littlefield failed to exhaust his administrative remedies and (2) his

factual allegations are insufficient to state a claim.  Docket No. 40 at 13-15; Docket No.

46 at 6-9.

### 1.  Exhaustion

"Exhaustion is a jurisdictional prerequisite under Colorado law" to bring a CADA

claim in federal court.  *Littlewood v. Novartis Pharm. Corp.*, No. 21-cv-02559-CMA-SKC,

2022 WL 3081919, at *7 (D. Colo. Aug. 3, 2022) (citing *City of Colo. Springs v.

Conners*, 993 P.2d at 1169 n.3).  Accordingly, a federal district court lacks subject

matter jurisdiction to hear a CADA claim brought by a plaintiff who has failed to exhaust

his administrative remedies.  *Id.*; *see also Lasser v. Charter Comm'ns, Inc.*, No. 19-cv-

02045-RM-MEH, 2020 WL 2309506, at *3 (D. Colo. Feb. 10, 2020) ("Defendant Brown's

allegation that Plaintiff failed to exhaust his administrative remedies implicates this

Court's subject matter jurisdiction to hear Plaintiff's claim") (CADA case); *Jackson v.

City and Cnty. of Denver*, No. 11-cv-02293-PAB-KLM, 2012 WL 4355556, at *2 (D.

Colo. Sep. 24, 2012) (dismissing CADA claim under 12(b)(1) because plaintiff did not

exhaust administrative remedies).

Dr. Littlefield argues that the Court should not consider the individual defendants' exhaustion argument because it was raised for the first time in their reply and is therefore waived.[11]  Docket No. 78 at 1-2.  However, a "defect in subject matter jurisdiction can never be waived and may be raised at any time."  *Huffman v. Saul Holdings Ltd. Partnership*, 194 F.3d 1072, 1076-77 (10th Cir. 1999).  Therefore, because they raise the question of the Court's subject matter jurisdiction, the Court will consider the individual defendants' argument that the Court lacks jurisdiction over Dr. Littlefield's CADA claims despite their failure to raise this issue in their motion to dismiss.

The individual defendants argue that Dr. Littlefield has failed to exhaust his administrative remedies as it applies to his CADA claim against them because his Complaint of Discrimination ("COD") does not list Ms. Arnold or Ms. Anderson as respondents or provide their addresses, as is required by Colo. Rev. Stat. § 24-34-306(1)(a)(I).  Docket No. 46 at 8.  Courts have repeatedly held that plaintiffs have not exhausted their administrative remedies against defendants who were not listed as respondents in their CODs, even if the CODs describe alleged discriminatory acts committed by those defendants.  *See Clayton*, 2021 WL 4078911, at *6 (finding no exhaustion because, "[w]hile [plaintiff] does make numerous references to [defendant] within the charge document, nowhere does she actually name [defendant] to be a 'respondent,' or otherwise identify him as such"); *Lasser*, 2020 WL 2309506, at *6 (finding no exhaustion where plaintiff "did not list or otherwise identify [defendant's]

_____

[11] Dr. Littlefield filed a surreply to address the individual defendants' exhaustion argument.  Docket No. 78; *see* Docket Nos. 48, 74.

name or address"); *Lindsay v. Denver Public Schools*, No. 20-cv-03477-CMA-MEH, 2021 WL 5277826, at *6 (D. Colo. Mar. 22, 2021) (finding no exhaustion where defendant was not a named respondent even though defendant was mentioned throughout the "discrimination statement" because "even such references are insufficient to satisfy the requirements of Colorado law") (applying Colorado law); *Bank*, 4 F. Supp. 3d at 1242 (finding no exhaustion where plaintiff's COD did not name defendant as a respondent even though plaintiff's affidavit referenced conduct by individual defendant).

 Dr. Littlefield concedes that neither Ms. Arnold nor Ms. Anderson are named as respondents in the COD.  Docket No. 78 at 3, 8; *see also* Docket No. 46-1.  Dr. Littlefield argues that Ms. Arnold and Ms. Anderson "were nonetheless individuals that [Dr. Littlefield] claimed had personally engaged in unlawful employment discrimination" and that "[t]o the extent [Ms. Arnold and Ms. Anderson] may not have literally been listed in the space on the [COD] form for 'Name (Respondent),' their intimate involvement in the underlying events was described in the charging materials, and therefore, for practical purposes they were listed and the exhaustion argument fails."  Docket No. 78 at 3, 8.  However, Dr. Littlefield cites no authority supporting the proposition that, where a COD contains sufficient detail of a defendant's involvement in alleged discrimination, a court may bypass the requirements of Colo. Rev. Stat. §§ 24-34-306(1)(a)(I) and (14) and exercise subject matter jurisdiction over a CADA claim against a defendant who was not named as a respondent and whose address was not

provided.[12]  Therefore, because Dr. Littlefield did not name Ms. Arnold or Ms. Anderson in his COD or provide their addresses, the Court does not have subject matter jurisdiction to adjudicate Dr. Littlefield's CADA claim against them.  The Court will dismiss Dr. Littlefield's second cause of action against Ms. Arnold and Ms. Anderson.

## IV. CONCLUSION

Therefore, it is

**ORDERED** that the Motion to Dismiss [Docket No. 40] is **GRANTED in part** and **DENIED in part**.  It is further

**ORDERED** that plaintiff's first cause of action against Cara Anderson is **DISMISSED without prejudice**.  It is further

**ORDERED** that plaintiff's second cause of action against Cara Anderson and Leslie Arnold is **DISMISSED without prejudice**.

DATED October 19, 2023.

BY THE COURT:

PHILIP A. BRIMMER
Chief United States District Judge

---

[12] Dr. Littlefield argues that the Court should apply the relation back doctrine to his COD based on the holding in *Craig v. Masterpiece Cake Shop, Inc.*, 370 P.3d 272, 278 (Colo. App. 2015), *rev'd sub nom. Masterpiece Cakeshop, Ltd. v. Colo. Civil Rights Comm'n,* 138 S. Ct. 1719 (2018), that "the omission of a party's name from a CADA charging document should be considered under the relation back doctrine."  However, the *Masterpiece* plaintiffs filed their formal complaint with the Office of Administrative Courts rather than initiating a civil action in a district court.  *Id.* at 277-78.  Because Colo. Rev. Stat. § 24-34-306(14) governs when a plaintiff may file a civil action in a district court, its exhaustion requirement was not at issue in *Masterpiece*.